# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

JOHN B. SUTTON, Defendant in Error, *vs.* THE FINDLAY CEMETERY ASSOCIATION, Plaintiff in Error.

*Opinion filed October 27, 1915—Rehearing denied Dec. 9, 1915.*

1. CEMETERIES—*when under-drainage of land to be used as a cemetery will be enjoined.* The under-drainage of land, proposed to be used as a cemetery, into a branch used by the owner of the adjoining farm as a watering place for stock, will be enjoined at the suit of such owner without any previous judgment at law declaring such under-drainage to be a nuisance, where the evidence establishes, beyond substantial doubt, that the under-drainage will contaminate and pollute the branch so as to render it unfit for the complainant's uses thereof.

2. SAME—*when use of land for cemetery purposes will not be enjoined.* The use of land for cemetery purposes will not be enjoined at the suit of the owner of an adjoining farm, on the theory that the proposed use, without under-drainage of the land, will be a nuisance, where the nature of the case, including the character and elevation of the land, is such as to preclude any satisfactory showing that a nuisance will inevitably result from such use.

3. SAME—*use of land for cemetery will not be enjoined because offensive to esthetic sense of adjoining owner.* A cemetery is not a nuisance *per se*, and the use of land for cemetery purposes can not be enjoined at the suit of the owner of adjoining land merely because it is offensive to his esthetic sense.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Shelby county; the Hon. ALBERT M. ROSE, Judge, presiding.

WHITAKER, WARD & PUGH, and E. A. RICHARDSON, for plaintiff in error.

F. R. DOVE, and A. L. YANTIS, for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Defendant in error, John B. Sutton, complainant below, filed his bill in the circuit court of Shelby county on October 16, 1913, against plaintiff in error, the Findlay Cemetery Association, defendant below, alleging that he was the owner of 194 acres of land described, and that the defendant corporation was the owner of ten acres of land adjoining complainant's land on the west. The bill alleges the defendant association has caused said ten-acre tract to be surveyed and platted for use as a public cemetery, and that the city of Findlay, having about 1000 inhabitants, is within forty rods of the west line of defendant's premises; that near the west line of defendant's land is the head or source of the west fork of a natural water-course known as the Eversman branch, and that said branch flows in an easterly direction across defendant's land and upon and across complainant's land, eventually emptying into the Okaw river; that the natural drainage of the land both of the complainant and defendant is toward said branch; that defendant's premises are low and flat; that said branch is a running stream eight or nine months each year, during which time it contains water sufficient in quantity and purity for the domestic stock of complainant; that for more than ten years complainant has lived on and occupied his premises, a considerable portion of which, together with

other land, has been tiled into said branch; that a portion
of complainant's land has been used for pasture and the
branch used for watering his stock.   The bill alleges de-
fendant has begun to tile and under-drain its premises in-
tended to be used as a burial ground, into said branch, and
that the proposed use of said premises will cause the dis-
charge from the tile drain to carry contamination, causing
the water discharged to be unhealthy and unfit for drink-
ing purposes for domestic animals and the lands of com-
plainant through which the branch runs thereby rendered
unfit for dairy purposes and stock raising, and also be the
cause of noxious odors spreading over complainant's farm
and about his residence, rendering the same uncomfortable
and unhealthful and causing irreparable damage to com-
plainant's premises, the branch thereby becoming a nuisance.
The bill alleges a temporary injunction should issue re-
straining defendant from under-draining its premises into
said branch, thereby contaminating the waters thereof, and
that upon hearing the injunction should be made perpetual.

On December 8, 1913, the bill was amended, the amend-
ment alleging the premises of defendant were unsuited for
cemetery purposes, and that during several months of each
year graves would fill at least one-half full of water while
the same were being dug; that under-drainage is neces-
sary to render the premises suitable for burial purposes;
that such drainage, after the interment of human bodies,
would contain bacteria and poisonous exudations from such
bodies, which would be carried upon complainant's prem-
ises by said water-course; also that bodies buried on the
premises of defendant would become so liquefied as to be
incorporated in the soil, and that water percolating through
the soil would take up the same and become filthy, poison-
ous and contaminated and pass onto and upon the land of
complainant and into said water-course, and thereby cause
the stock and land of complainant to greatly depreciate in
value.   The amended bill prays the defendant, its agents,

grantees or assigns, be enjoined from selling, or attempting to sell, any lot in its premises for burial purposes, or from interring or permitting to be interred therein any body or bodies, or permitting the premises to be used as a burial ground for human bodies.

Defendant answered the bill, admitting the ownership of the ten acres of land, its proposed use for burial purposes, its location with reference to the city of Findlay, the existence of the Eversman branch and that the drainage of its and complainant's land is towards such branch, but denying its premises are low and flat, as alleged; denying said stream is a running stream eight or nine months of the year, but alleging the same is a wet-weather stream and that defendant's premises are dry and well drained. The answer admits a tile ditch has been constructed, by means of which defendant intends to drain and under-drain its lands which it intends to use for burial purposes, the outlet of which drain will be in said branch or stream; that the proposed tile drain, because of the use of defendant's premises for cemetery purposes, will not contaminate the water of said branch and cause or occasion the damages to complainant alleged in his bill. The answer alleges the purpose of its tile drains is to carry off surface water, and that the tile and drains constituting the under-drainage are in the center of the driveways; that no grave will be closer than eighteen feet to the tile and that the tile will be but a little lower than the bottom of the graves, and alleges it will be impossible for any part of the decomposed bodies to go or be carried onto the premises of complainant or any obnoxious gases reach complainant's residence. The answer alleges drainage from the city of Findlay is carried to said water-course and complainant has made no complaint, and denies complainant is entitled to any relief under either the original or amended bill.

The cause was heard before the chancellor, who dismissed the bill for want of equity. The decree was re-

versed, on appeal, by the Appellate Court for the Third District, and the cause was remanded, with directions that a decree be entered granting the injunction prayed for. The record is brought to this court for review by a writ of *certiorari*.

The evidence showed the branch or ravine into which it was proposed to discharge the under-drainage from the cemetery is a small, winding water-course which is dry about one-fourth of the time. In wet weather it is a running stream, and it is used as an outlet for tile drainage from adjacent lands, which increases the flow of water through it for a longer period of time than would otherwise be the case. There are no springs in or adjacent to the branch, from which it is fed. In dry weather, after the land tiled into it has drained out, the bed of the stream is dry. The cemetery corporation owns ten acres of land, nearly all of which lies south of and slopes towards the branch. It laid an eight-inch tile near and substantially parallel with the branch and emptying into it, and four other strings of four-inch and five-inch tile running from the south part of the cemetery north and emptying into the eight-inch tile, through which the outlet was into the branch. These strings of four-inch and five-inch tile were laid in the driveways and were three or three and one-half rods apart and were laid about four and one-half to five feet deep. Some of the lots intended to be used for the burial of bodies were very near these tile. After leaving the cemetery grounds the branch runs through land of the complainant used for pasturing live stock. The testimony shows that the branch furnished water for complainant's stock the greater portion of the time, except in very dry weather. Among the stock drinking the water from the branch were the complainant's milk cows, as well as other cattle, horses and hogs. The bill as originally filed only sought to restrain the under-drainage of the cemetery into the branch and alleged no other injury to complainant than

would result from that cause. By an amendment it was alleged the cemetery land was so wet that in order to render it suitable for burial purposes it was necessary to under-drain it, and that the use of it for burial purposes would pollute the water in the branch and render it poisonous. The amended prayer asked that the cemetery corporation be enjoined from selling, or attempting to sell, any lot or lots for burial purposes, or from interring or permitting to be interred any bodies therein, or from using any part of its premises as a burial ground for human bodies.

The most material evidence for complainant as to the effect of under-draining the cemetery into the branch was the testimony of Dr. Holmes (who is the same Dr. Holmes referred to in *Barrett* v. *Mt. Greenwood Cemetery Ass'n,* 159 Ill. 385,) and Dr. Gehrman, both of whom are bacteriologists of much experience and observation, and Dr. Westervelt, a local physician, who had been for some years a member of the State Board of Health. Their testimony is too voluminous to set out, but it showed them to be familiar with the subject about which they were testifying, and qualified, from knowledge and experience, to express an opinion as to the effect on the water in the branch from under-draining the cemetery into it. They testified the water and liquid from decaying bodies would percolate through the soil into the tile, carrying poisonous or disease germs, which would be discharged through the tile into the branch and thereby pollute it. This testimony was not successfully controverted. It is true, local physicians who did not claim to be experts and who had not made the subject a study and who had never made any experiments or tests, gave it as their opinion that the under-drainage would not materially affect the water in the branch for the purposes for which it was desired to use it.

Defendant insists that as a cemetery is not a nuisance *per se* but may or may not be a nuisance, according to cir-

cumstances, its character as such should have been first established by a judgment in an action at law before a court of equity would interfere, by injunction, to restrain or abate it.  That this was formerly the rule is undoubtedly true, but that rule has in more modern times not been strictly adhered to.  In cases where, although the thing sought to be restrained is not a nuisance *per se,* the right to that relief is so clear as to be free from substantial doubt the relief will be granted without first resorting to an action at law to declare the thing a nuisance. · This question was fully discussed in *City of Pana* v. *Washed Coal Co.* 260 Ill. 111, where the authorities on the subject are cited and reviewed and the rule approved that if there is a substantial dispute as to the fact or law and the question is in doubt, a trial at law will be required before equity will interfere.  It is only in cases where the unreasonable or unlawful use of property to the injury of others is clearly proved that it is unnecessary the question should first be determined in an .action at law.

*Barrett* v. *Mt. Greenwood Cemetery Ass'n, supra,* was a proceeding in equity to enjoin the drainage of a cemetery into a running stream of water, and the injunction was sustained without requiring a resort first to an action at law.  Some portions of the cemetery grounds were so wet and swampy that water would rise in openings dug for graves to such an extent as to cause their abandonment. It was proposed to under-drain this land and empty the drainage into a running stream of water which flowed through the land of complainants.  The stream was fed from springs, and the water from it was used by complainants for stock, for cows kept for dairy purposes, for making ice, and to some extent for domestic purposes.  One of the complaining parties harvested ice to the extent in value of from $5000 to $6000 a year and sold it for refrigerating and domestic purposes or use.  The court said that the conclusion that the water percolating through the

soil into the tile and thence running into the brook would contaminate the water therein and render it unfit for some of the purposes for which it was used was established by a clear preponderance of the evidence and was in accord with common understanding.

We are of opinion the evidence in this case left it free from substantial doubt that the proposed under-drainage of defendant's cemetery would contaminate and injuriously affect the water on complainant's premises for the uses to which it was put, and complainant was therefore entitled to the writ of injunction restraining the under-drainage of the cemetery into the branch. The chancellor erred in not so decreeing, but did not err in denying the injunction as prayed in the amended prayer, restraining the use of the land for burial purposes.

The complainant contends that even without the under-drainage the burial of human bodies in the cemetery will contaminate the air on complainant's land and pollute the water of the branch. The court sustained defendant's objection to the plaintiff's offer of proof upon this question. In view of the character and lay of this land and the nature of the proof proposed to be made, we are satisfied it could not, under the rules of law above referred to, have justified awarding the writ of injunction. The great weight of the proof showed the land was not low, swampy land. It slopes from south to north, and in a distance of about thirty rods, which is its width, has a fall of from five to eight feet. Water does not accumulate and stand on it, nor is it water-logged, as charged in the amendment to the bill. Water on its surface finds its way with reasonable speed into the branch, and even if complainant's witnesses had been permitted to testify, and had testified, that in their opinion the use of the land for burial purposes, without any under-drainage, would injuriously affect complainant's premises and pollute the water of the branch, the very nature of the case is such it would not have estab-

lished the fact so clearly and free from substantial doubt as to have justified enjoining, in this proceeding, the use of the land as a burial ground. It is not enough that it threatened to or might become a nuisance, but the proof would be required to go to the extent of satisfactorily showing that a nuisance is inevitable from the proposed use of the premises. In *McCutchen* v. *Blanton,* 59 Miss. 116, it was said: "Every doubt should be solved against the restraint of a proprietor in the use of his own property for a purpose seemingly lawful and conducive both to individual gain and the general welfare. Relief by injunction is so severe in its consequences that it is not to be granted in such a case except when the right to it is clearly and conclusively made out. To interfere with one's right to use his own land for the production of what he pleases, in a case of doubt, would be a flagrant abuse of power. It is not enough to show a probable and contingent injury, but it must be shown to be inevitable and undoubted." This is the rule in this State and generally throughout the United States. A cemetery may be objectionable or offensive to the taste of an adjoining owner but it is not a nuisance *per se,* and its use cannot be enjoined merely because it is offensive to the esthetic sense of an adjoining proprietor. Before it can be abated or its use enjoined it must be clearly and satisfactorily proven to be a nuisance, and this cannot be done by evidence tending to show that it might become such.

Under the proof we think the Appellate Court erroneously remanded the case with directions to the trial court to grant the decree as prayed in the bill as amended, and its judgment will be reversed and the cause remanded to the trial court, with directions to grant an injunction restraining the defendant from under-draining its cemetery grounds into the west fork of the Eversman branch and denying the other relief prayed.

*Reversed and remanded, with directions.*