ELLEN M. TALTY, Defendant in Error, *vs.* FRANK SCHOEN-
HOLZ, Sheriff, Plaintiff in Error.

*Opinion filed October 28, 1926.*

1. MORTGAGES—*Bulk Sales act does not apply to chattel mort-
gages.* A chattel mortgage is not a sale or transfer within the
meaning of the Bulk Sales statute, as the relation of the parties is
merely that of debtor and creditor until foreclosure of the mort-
gage, and possession remains in the mortgagor subject to the mort-
gagee's lien.

2. SAME—*when there is a presumption of acceptance of a chat-
tel mortgage—the burden of proof.* The execution, acknowledg-
ment and recording of a chattel mortgage which is beneficial to
the mortgagee by giving her security against her liability as surety
on notes of the mortgagor and imposes no liability upon her, raise
the presumption of acceptance of the mortgage by her and are
*prima facie* evidence of its delivery, and the burden is on the party
denying delivery to overcome the presumption.

3. SAME—*when mortgagee's ignorance of execution of chattel
mortgage overcomes presumption of acceptance—judgment.* The
presumption of acceptance arising from the recording of a chattel
mortgage beneficial to the mortgagee is overcome by proof that
the mortgagee was away at the time of the execution of the mort-
gage and did not know of its existence until her return, when she
found it on her desk after it had been mailed to her; and such
mortgage, not taking effect until its acceptance, cannot take prece-
dence over a judgment the execution on which had been delivered
to the sheriff prior to the acceptance of the mortgage, but if valid
it will take precedence over a judgment executed thereafter.

4. SAME—*chattel mortgage reserving the right to use consum-
able chattel is fraudulent.* To render a chattel mortgage valid
there must be a *bona fide* and certain appropriation of the prop-
erty for the benefit of the mortgagee and not a colorable one in
which the mortgagee has only a contingent interest dependent upon
the good faith of the mortgagor, and a mortgage of property con-
sumable in its use is *prima facie* fraudulent if possession is re-
served by the mortgagor, and is fraudulent *per se* if the right to
use such property is also reserved.

5. SAME—*section 2 of the Mortgage act, prior to amendment of
1925, required chattel mortgage to be acknowledged by justice of
town where mortgagor resides.* Under section 2 of the Mortgage
act, prior to its amendment in 1925, a chattel mortgage, to be

valid as against the rights and interests of third persons, when acknowledged before a justice of the peace, must be acknowledged before a justice of the peace of the town where the mortgagor resides.

6. DEEDS—*ignorance of existence of deed overcomes presumption of acceptance.* The presumption of acceptance arising from the recording of a deed and from its beneficial character is overcome when it is shown that the grantee had no knowledge of the existence of the instrument.

7. SAME—*title does not pass unless acceptance is established by presumption or proof.* The acceptance of a deed by the grantee is as essential as the delivery by the grantor, and where the acceptance is not proved and the facts do not justify the presumption of law that the grantee has accepted, the title does not pass.

8. REPLEVIN—*when section 22 of Replevin act does not authorize a money judgment against the plaintiff.* Where the holder of a chattel mortgage has replevied property levied upon by a sheriff it is proper to award to the sheriff a return of property not included in the mortgage, but the court is not authorized, under section 22 of the Replevin act, to give judgment for the sheriff that in default of such return he may recover the amount due under the executions levied on the property, in the absence of proof that the property was worth the amount of the executions.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lee county; the Hon. WILLIAM J. EMERSON, Judge, presiding.

R. W. BESSE, and CLYDE SMITH, for plaintiff in error.

H. A. BROOKS, and SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, (HERBERT M. LAUTMANN, ELMER W. LEESMAN, and EDWARD P. MORSE, of counsel,) for defendant in error.

Per CURIAM: In an action of replevin against the sheriff of Lee county, Mrs. Ellen M. Talty recovered a judgment in the circuit court of that county finding the issues in her

favor as to certain property upon which the sheriff had levied three executions and which was included in a chattel mortgage in which Mrs. Talty was the grantee. The cause was heard by the court without a jury, the Appellate Court affirmed the judgment, and a writ of *certiorari* was awarded to bring the record before us for review.

The judgments on which the executions were issued were against P. F. and E. J. Talty. The first, in favor of Herman Matson for $3376, was delivered to the sheriff on October 15, 1920; the second and third, in favor of the State Bank of Sterling for $898.72 and $1940.94, were delivered to the sheriff, respectively, on November 3 and November 4. P. F. Talty, the grantor in the chattel mortgage, was the son of the grantee. He was the owner of a farm, which was heavily incumbered, and of personal property consisting of farming implements, livestock, hay and grain. Besides the mortgage indebtedness on the farm he owed considerable sums to other creditors, and his mother, previous to the execution of the mortgage, had paid some notes and signed others as security for him, amounting to several thousand dollars. The Union State Bank requested additional security of him, and he asked his mother to sign his notes. She said she did not think she would sign any more notes before she got better security. He offered to give her a mortgage on the farm, which was already heavily incumbered, but she said she preferred a chattel mortgage, and he said he would give her a chattel mortgage on the property on the farm. The mortgage was acknowledged October 12, 1920, and purported to secure a note of the mortgagor to the mortgagee for $6000, dated October 11, 1920, due two years after date, with interest at six per cent. The abstract of the testimony does not show just what date the talk between Mrs. Talty and her son about his giving her a chattel mortgage occurred, but the inference seems quite plain that it was very shortly before the mortgage was executed. Mrs. Talty was not present when the

mortgage was executed and filed for record. She lived in Dixon, but was, at the time the mortgage was made and recorded, visiting in Chicago. The mortgage was recorded October 13 and was mailed to her at Harmon. She testified she did not live there but occasionally got mail there. She returned home about a week after the mortgage was executed and recorded and found it in or on her desk at her home in Dixon. The recorder testified it was mailed, after being recorded, to Mrs. Talty at Harmon, according to instructions given when the mortgage was filed, but could not recall who it was gave the instructions. Mrs. Talty testified there was a letter from her attorney with the mortgage when she found it on her desk after her return home. The first information she had of its execution was when she found it on her desk.

No attempt was made by the parties to comply with the Bulk Sales statute, and it is contended that to make a chattel mortgage valid, that act must be complied with in the same manner necessary to make an absolute sale valid. That question has not heretofore been presented to this court for decision. The first Bulk Sales act in this State was adopted in 1905 and was held unconstitutional in 1908 as class legislation. (*Off & Co.* v. *Morehead,* 235 Ill. 40.) That act provided "that a sale of any portion of a stock of merchandise" otherwise than in the ordinary course of trade or the seller's business, or "a sale of an entire stock of merchandise in gross," will be presumed to be fraudulent and void as against creditors unless the other provisions of the act were complied with. It will be seen that act mentioned only sales. The present act, passed in 1913, makes "the sale, transfer or assignment" of the whole or major part of goods and chattels fraudulent and void unless the other provisions of the act are complied with. Counsel for plaintiff in error argue that the use of the words "transfer or assignment" in the present act, in addition to "sale," shows an intention of the legislature to give wider scope to the present act than

was intended by the first act, and that the words "transfer or assignment," unless held to embrace a chattel mortgage, would have been wholly unnecessary and meaningless.

Many States of the Union have passed bulk sales acts. The primary object of such statutes is to prevent the owner of goods and chattels who is indebted to creditors from selling the whole or major part of his goods and chattels without giving the purchaser notice who his creditors are and without notice having been given the creditors of the proposed sale. Sales without compliance with the requirements of the statute are declared to be either void, or fraudulent and void, as against creditors. In 1905 Michigan passed an act the title of which was, "An act to regulate the sales, transfers and assignments of stocks of goods, merchandise and fixtures in bulk." The body of the act declared that "the sale, transfer or assignment" in bulk of the whole or any part of a stock of merchandise, or merchandise and fixtures, contrary to the requirements of the act, "shall be void as against the creditors of the seller, transferrer or assignor." Oklahoma passed an act in 1907-08 which declared "the transfer of any portion of a stock of goods" without compliance with the requirements of the act "shall be presumed to be fraudulent and void as against the creditors of such transferrer." The Nebraska act was passed in 1913, and declared "the sale, trade or other disposition" without compliance with the requirements of the act "shall be void as against the creditors of the seller." Arkansas passed an act in 1913 which declared "the sale, transfer or assignment, in bulk," etc., contrary to the requirements of the statute, "shall be void against the creditors of the seller, transferrer or assignor." The Rhode Island act, passed in 1909, declared "the transfer of the major part in value of the whole of a stock of merchandise," etc., contrary to the provisions of the statute, "shall be fraudulent and void as against all persons who are creditors of the transferrer." The Virginia act, passed in 1919, pro-

vides "the sale, transfer or assignment in bulk of any part or the whole of a stock of merchandise," etc., contrary to the requirements of the statute, "shall be void as against creditors of the seller."

In each of the above States, except Virginia, the question whether the statute applied to a chattel mortgage given on the goods and chattels of the owner so as to require compliance with the provisions of the statute in order to render the chattel mortgage valid has been passed upon by the Supreme Court. In the case of *Hannah & Hogg* v. *Richter Brewing Co.* 149 Mich. 220, decided in 1909, the court, after referring to the rules for construing statutes, and that to find the legislative intent of an act the whole act should be considered and the ordinary meaning given the words used in the statute, said: "The terms 'sale, transfer or assignment,' used in the entitling and in the body of the act, taken in their usual and ordinary signification, mean the disposition of the entire title of the seller. This meaning is indicated by the provision in the statute relative to notice required to be given to creditors, as follows: 'And unless the purchaser, transferee and assignee shall, at least five days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally, or by registered mail, every creditor whose name and address are stated in said list or of which he had knowledge, of the proposed sale, and of the price, terms and conditions thereof.' Taking this language and the other language of the act, it is apparent that its object was to regulate those sales made of an entire stock upon an immediate payment and change of possession, and which before the act might have been valid although in fact a fraud upon creditors. To hold a chattel mortgage within the meaning of the statute it is necessary to hold that it is a sale, within the common acceptation of that term, transferring the entire title and entitling the vendee to immediate possession."

Counsel for plaintiff in error insist the Michigan statute is different from ours and that the decision of the Michigan court should not be even persuasive. It is pointed out that by the Michigan statute a sale, transfer or assignment without complying with the act is "void," and the Illinois act makes it "fraudulent and void." To our minds that does not distinguish the two statutes and require that they be differently construed. The phraseology of the two acts in other respects is not precisely the same, but they are about as similar in language and meaning as two acts can be, unless they are word for word the same.

In *Noble* v. *Ft. Smith Wholesale Grocery Co.* 46 L. R. A. (n. s.) 455, the Supreme Court of Oklahoma, in passing upon the validity of a chattel mortgage given upon a stock of goods without complying with the requirements of the Bulk Sales act, quoted the definition of Bouvier that a transfer is the act by which the owner delivers property to another with intent of passing to him the rights the owner has to the property, and, answering the contention that under that definition a chattel mortgage is a transfer, said: "We cannot agree with the contention, for the mortgagor never surrendered possession under the mortgage but only agreed to deliver possession upon default or breach of conditions of the mortgage. And the creditor, if so disposed, even after a breach of conditions, could, and in this case did, fail to take possession, and yet the instrument was none the less a chattel mortgage, with the possession in the mortgagor, who still had the full right of redemption under the laws of this State." The court, after referring to numerous authorities, said a chattel mortgage was not such a transfer as the legislature meant by the act and did not come within its inhibition.

The Supreme Court of Nebraska, in *Appel Mercantile Co.* v. *Kirtland,* 105 Neb. 494, held the act of that State did not embrace chattel mortgages, and that a mortgage given on property without a compliance with the act was

valid. The same was held by the Supreme Court of Arkansas in *Farrow* v. *Farrow,* 136 Ark. 140, and the Supreme Court of Rhode Island in *Aristo Hosiery Co.* v. *Ramsbottom,* 129 Atl. 503.

The Federal court held in *United States* v. *Lankford,* 3 Fed. (N. S.) 52, that under the Bulk Sales act of Virginia a mortgage was not an instrument of sale, transfer or assignment within the meaning of the Virginia act.

The circuit court of appeals in *Central Trust Co.* v. *First Nat. Bank of Oak Park,* 297 Fed. 943, construing the Illinois act and whether it required that its terms and conditions be complied with to render valid a chattel mortgage given upon the property, said: "While the question as to whether the transfer by means of a chattel mortgage comes within the provisions of the Bulk Sales act has not, so far as we are informed, been determined by the Illinois courts, there are such fundamental differences between a conveyance by which a vendor absolutely divests himself of the title to his property and a conveyance by a chattel mortgage which carries with it the right to re-pay the consideration and cancel the transaction, that it seems improbable that if it had been any part of the legislative intent to include chattel mortgages within the prohibition contained in the act the legislature would have included chattel mortgages by name, or by some other designation that would have afforded some means of ascertaining such legislative intent."

We have been referred to a decision of the Supreme Court of Kansas sustaining the opposite view. This is the case of *Linn County Bank* v. *Davis,* 103 Kan. 672. In that case the owner gave to another party a bill of sale and possession of the property with an agreement that it would be returned upon the payment to the purchaser of the purchase price. The court treated the transaction as a sale, and said in that State the title to chattels passed by a chattel mortgage and amounted to a sale or disposal of the property. The court of civil appeals of Texas in *Beam*

v. *National Liquor Co.* 198 S. W. 596, held that a chattel mortgage came within the provisions of the Texas Bulk Sales act. The Federal district court for that State held in *In re Martin,* 283 Fed. 833, that chattel mortgages did not come within the provisions of the Texas act, and cited the decisions of the Supreme Courts of Arkansas, Michigan, New Jersey, Oklahoma and Massachusetts as being contrary to the decision of the Texas court.

There are differences in the phraseology of the bulk sales statutes of the States whose courts have construed the acts with reference to whether they embraced chattel mortgages, and our statute, but the differences are not so material as to require a different construction as to what transactions they apply. Some of them make a transfer without compliance with the act "void" as against creditors, and some of them say such transfers shall be "fraudulent and void" as against creditors. The objects and purposes of all the acts are the same. Some of the acts use only the word "sale" and some of them use only the word "transfer," but most of them, including Illinois, Michigan, Arkansas and Virginia, use the words "sale, transfer or assignment," and so far as we are informed the courts of appeals of the States which have passed upon the question, except Texas and Kansas, have held a chattel mortgage is not a sale, transfer or assignment within the Bulk Sales act; that until the foreclosure of the chattel mortgage the relation of the parties is that of debtor and creditor, the latter being secured by a lien on the property, possession remaining in the mortgagor. It may be that we would not be justified in holding our statute was adopted from the statute of the State of Michigan after the statute of that State had been construed by the Supreme Court and that the legislature was presumed to have intended our act should receive the construction given by the courts of Michigan. As we have said, counsel for plaintiff in error insist that there are such differences between the language of our statute and the Michigan stat-

ute that it could not have been adopted from the Michigan act. The Michigan act, like ours, applies to sales, transfers or assignments, and we are unable to see any material difference in the two acts as to the transfers to which they were intended to apply. The statutes of the other States to which we have referred are not materially different from those of Illinois and Michigan upon the question here involved. In *Mills* v. *Sullivan*, 111 N. E. (Mass.) 605, the Supreme Court of Massachusetts held a chattel mortgage was not within the terms of the Bulk Sales act of that State. The statute is not quoted or set out in the opinion, but *Wasserman* v. *McDonnell*, 76 N. E. (Mass.) 959, is cited as authority for the statement that a chattel mortgage was not embraced in the act. In the *Wasserman case* only the title of the act is set out in the opinion. The title is, "An act to prohibit the sales of merchandise in bulk in fraud of creditors." The decisions of that court are at least authority for the proposition that a "sale" does not mean the execution of a chattel mortgage. Some of the cases we have cited are not decisions of courts of final resort, and those that are would not even be persuasive if the statutes construed by those courts were materially different from ours. Where, however, a question is presented to this court the first time for decision and the same question has been determined by courts of final resort in other States, and especially where the decisions of the courts of other States upon the question are substantially unanimous, we would hesitate to give a contrary decision. We are, however, of opinion the question was correctly decided by the courts that a chattel mortgage is not a sale or transfer within the meaning of the Bulk Sales act. We are confirmed in this opinion by the language of the statute itself, which seems to contemplate a taking possession of the goods and chattels and a payment or delivery of the purchase price or the giving of an evidence of indebtedness therefor by the vendee, as it provides that the sale, transfer or assignment shall be fraudu-

lent and void as against the creditors of the vendor unless the vendee shall at least five days before taking possession of the goods and chattels, and at least five days before the payment or delivery of the purchase price or consideration or any evidence of indebtedness therefor, in good faith, give due notice to each of the creditors of the vendor of the proposed purchase by him and of the price, terms and conditions of the same.

It is contended by plaintiff in error that the chattel mortgage was void as against the executions for the reason that there was no delivery of the mortgage to defendant in error and acceptance of it by her, and for other reasons. The execution, acknowledgment and recording of the mortgage, which was beneficial to the mortgagee by giving her security against her liability as surety and imposed no liability upon her, raised the presumption of its acceptance by her and were *prima facie* evidence of its delivery. (*Himes* v. *Keighblingher,* 14 Ill. 469; *Warren* v. *Town of Jacksonville,* 15 id. 236; *Dale* v. *Lincoln,* 62 id. 22; *Union Mutual Life Ins. Co.* v. *Campbell,* 95 id. 267; *Harshbarger* v. *Carroll,* 163 id. 636; *Hathaway* v. *Cook,* 258 id. 92.) This evidence was, however, not conclusive but was presumptive, only. It imposed upon the party denying that there was a delivery the burden of overcoming the presumption. To render a deed operative to pass title there must be not only a delivery of the deed by the grantor but an acceptance by the grantee, and the presumption of acceptance by the recording of the deed and the beneficial character to the grantee is overcome when it is shown that he had no knowledge of the existence of the instrument. *Hulick* v. *Scovil,* 4 Gilm. 159; *Kingsbury* v. *Burnside,* 58 Ill. 310; *Union Mutual Life Ins. Co.* v. *Campbell, supra; Weber* v. *Christen,* 121 Ill. 91; *Moore* v. *Flynn,* 135 id. 74; *Brown* v. *Brown,* 167 id. 631.

In *Kingsbury* v. *Burnside, supra,* the deed the delivery of which was in question was executed by the grantor, Si-

mon B. Buckner, on May 15, 1861, at Louisville, Kentucky, in the absence of the grantee, Henry W. Kingsbury, who was the brother of Buckner's wife, and wholly without his knowledge or any previous arrangement or communication between the parties on the subject, and mailed to the grantor's agent in Chicago with instructions to have it recorded, and this was done. The deed never came to the possession of the grantee, but on July 7, 1861, Buckner, while walking with the grantee in the city of Washington, said to him: "By the way, the property of your sister has been deeded to you, and I want you to look after her interests and see that she has her property," to which Kingsbury replied, "All right," or "Very well," or words to that effect. This was the first knowledge the grantee had of the transaction. The court, in discussing the question of the delivery of the deed, after stating that it appeared affirmatively that the grantee, who had died before the question of delivery arose, had never had possession of it, stated that there could be no doubt that up to the time Buckner and the grantee met in July the deed had not become operative, and concluded that when Buckner notified Kingsbury, in July, of the making of the deed, the latter by his reply consented to receive it and that the deed then for the first time became operative.

In *Union Mutual Life Ins. Co.* v. *Campbell, supra,* the grantor in the deed, anticipating some embarrassment in his business and desiring to secure his property for the benefit of his family inquired of a friend if he might convey the property to him in furtherance of this purpose, and the friend assented. The owner afterward executed and acknowledged a deed to his friend. It was recorded and after the grantor's death was found in the recorder's office. The grantee had never been in possession of the deed or of the property and had no knowledge of the existence of the deed until after the grantor's death, and it was held that there was no delivery of the deed to the grantee; that the

*prima facie* evidence of a delivery afforded by the recording of the deed had been fully rebutted by the other circumstances; that acceptance was essential to a delivery, and that the assent of the grantee prior to the execution of the deed did not amount to such acceptance after it was executed.

The acceptance of the conveyance by the grantee is as essential as the delivery by the grantor, and where the acceptance is not proved and the facts do not justify the presumption of law that the grantee has accepted, the title does not pass. (*Moore* v. *Flynn, supra.*) Since Mrs. Talty's first knowledge of the existence of the mortgage was ten days or more after its execution on October 12, there could have been no acceptance of the mortgage before that time, and it did not, therefore, if it became effective, become effective until after the execution on the Matson judgment had been delivered to the sheriff and became a lien on the property. It did become effective, however, if at all, at that time, which was before the executions in favor of the State Bank of Sterling were delivered to the sheriff, and it is therefore necessary to determine whether the mortgage was void for other reasons.

The chattel mortgage in question contained a provision that until default was made in the payment of the note it should be lawful for the mortgagor to retain the possession of the mortgaged property and use the same. The larger part of the property covered by the mortgage was of such a character that it was consumable by any use thereof which might be made by the mortgagor, and the evidence shows that much of it had been consumed prior to the foreclosure of the mortgage. To render a mortgage valid there must be a *bona fide* and certain appropriation of the property for the benefit of the creditor, and not a colorable one, in which the creditor has only a contingent interest, dependent upon the good faith of the mortgagor. (*Tennessee Nat. Bank* v. *Ebbert,* 9 Heisk. 152.) Based upon

*Morgan Bros.* v. *Dayton Coal and Iron Co.* 183 S. W. 1019, *Morris* v. *Clark,* 62 id. 673, *Merchants and Mechanics Savings Bank* v. *Lovejoy,* 55 N. W. 108, *First Nat. Bank of Chicago* v. *Caperton,* 22 So. 60, *Franzke* v. *Hitchon,* 80 N. W. 931, *Robbins* v. *Parker,* 3 Metc. (Mass.) 117, *Darwin* v. *Handley,* 3 Yerg. 502, and other cases, the general rule is laid down in 11 Corpus Juris, 567, that a mortgage of property which is consumable in its use is *prima facie* fraudulent if possession is reserved by the mortgagor, and that it is fraudulent *per se* if the right to use such property is also reserved. These cases differ from *Cleaves* v. *Herbert,* 61 Ill. 126, where the property would not necessarily be consumed by the only use which could be made of it.

The evidence in the case shows that at the time of the making of the mortgage P. F. Talty, the mortgagor, was a resident of the town of Nachusa, Lee county, Illinois, and the mortgage recites this fact on its face. It was acknowledged before Harold F. Sheller, police magistrate of Dixon, in the town of Dixon, in Lee county. By virtue of section 2 of the Mortgage act as it existed at the time of the making of this mortgage, a chattel mortgage, to be valid as against the rights and interests of third persons, when acknowledged by the mortgagor before a justice of the peace, must be acknowledged before a justice of the peace of the town where the mortgagor resided. *Lyons* v. *People's Bank of Lexington,* 317 Ill. 44.

The mortgage in question being void as against creditors the court should have found the issues in favor of plaintiff in error.

The judgment awarded to the plaintiff in error a return of certain property which was taken by the writ of replevin, not included in the chattel mortgage, and it is alleged that the court erred in not giving judgment for the plaintiff in error that in default of such return he should recover the amount due under the executions levied on the property. Section 22 of the Replevin act provides that if

the property was held for the payment of any money, the judgment may be in the alternative that the plaintiff pay the amount for which the same was rightfully held, with proper damages, within a given time, or make return of the property. This statute did not authorize the entry of a judgment against the defendant in error for the amount of the executions without proof that the property was worth that amount. The measure of damages for a failure to return the property could not exceed the value of the property.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*