ILLINOIS PURE WATER COMMITTEE, INC. *et al.*, Plaintiffs-Appellants, *v.* DR. FRANKLIN YODER, Director of Department of Public Health *et al.*, Defendants-Appellees.

(No. 70-146;

Fifth District—July 19, 1972.

JONES, J., dissenting.

Walker & Williams, of Belleville, (Edward G. Maag, of counsel, ) for appellants.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and Herman R. Tavins, Assistant Attorneys General, of counsel,) for appellees.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

This action for injunctive and declaratory relief was brought against the defendant, Dr. Franklin Yoder, Director of the Illinois Department of Public Health and the Alton Water Company. The defendant filed a motion to strike and dismiss the complaint and the lower court, upon consideration of the pleadings, granted defendant's motion and ruled that the complaint failed to state a cause of action. An appeal was taken from the order.

The plaintiffs are the Illinois Pure Water Committee, Inc., Ruby N. Hale, individually and as an officer of the corporation plaintiff, J. O. Bear, mayor and chief executive officer of the Village of Pesotum, Illinois, and George Edward Hiscott, IV, a Christian Scientist and resident of Highland Park, Illinois. The plaintiffs brought the action individually and as representatives of all citizens of the State of Illinois and all users of public water supplies in the State. The plaintiffs sought the following relief: (1) A temporary injunction pending the outcome of the litigation; (2) a declaration that Chapter 111½, Section 121(b)(1) which provides for compulsory fluoridation of water supplies, is unconstitutional, or in the alternative; (3) a declaration that Dr. Yoder and his department have failed to adopt rules and regulations in accordance with statutory mandate; (4) a declaration that the defendants have usurped legislative function by adopting rules which do not conform to the statutory mandate; and (5) after a hearing on the cause a permanent injunction restraining defendants from (1) introducing fluorine into the water supplies and (2) enforcing or complying with the provisions of Chapter 111½, Section 121(g)(1).

■■ Motions to dismiss or strike a pleading admit facts well pleaded, but not conclusions of law or conclusions of facts unsupported by allegations of specific facts upon which such conclusions rest and when constitutional issues are involved, facts relied upon to rebut the presumption of constitutionality must be specifically set forth. *Pierce v. Carpenter*, 20 Ill.2d 526, 169 N.E.2d 747; *Heyman v. Mahin*, 49 Ill.2d 284, 275 N.E.2d 421.

In amended Count I the plaintiffs allege the following:

1. That fluorine is being injected into the water system pursuant to

Chapter 111½, Sec. 121, and it is a poisonous, noxious and deleterious element;

2. That the defendant has not promulgated any rules nor provided for any facilities which will assure all of the citizens of the State of Illinois that poisonous or noxious substances, dangerous to the health of the citizens will not be introduced into the water supply of this State—Section 121(g)(1) requires all public supplier of water in this State to introduce the element "fluorine" into the water supply of this State under conditions which render the consumption of public water supply by the citizens of this State, potentially hazardous and dangerous to the lives, health and welfare of the citizens consuming said water;

3. That there are no provisions for trained technicians who have ability to watch the system;

4. That there are no safe tests to regulate the level of fluorine and testing on a monthly basis is inadequate.

5. That the compulsory introduction of fluorides into the water supplies of this state is so hazardous by reason of its poisonous nature to the human body, that the level of concentration must be held to less than 1.2 milligrams per liter under the provisions of Chapter 111½, Section (gl), but neither said statute nor the regulations of the Department of Public Health attempt to take into consideration the environmental exposure of citizens of this state to fluorides from sources other than the levels provided to be maintained in the water supplies hereof and by reason thereof, citizens of this state will be forced to submit their bodies to hazardous and dangerous levels of fluorides, if the water supplies of the State are polluted by the introduction of this noxious substance purportedly under the provisions of said statute and the regulations of the Department of Public Health.

6. That scientific knowledge has greatly expanded since 1964. (In this year the Illinois Supreme Court in *Shuringa v. City of Chicago*, 30 Ill.2d 501, 198 N.E.2d 326 (1964) ruled that fluoridation was not unhealthy and was a proper exercise of the police power of the municipality) which evidences that fluorides are harmful and injurious.

As a result of this the plaintiffs contend that (1) the statute is unconstitutional because it denies plaintiffs due process of law and places their lives and health in jeopardy without due process of law by forcing the plaintiffs to consume the tainted water; (2) the statute is so vague and uncertain and lacks requisite safeguards as to render it unconstitutional; (3) that the statute is an unconstitutional delegation of authority.

The merits of the case may prove the well pleaded portions of these contentions to be false, but this case was decided on the pleadings and

one must assume these facts as true. Making such an assumption, one must conclude that the plaintiffs did state a cause of action and it was error to dismiss their complaint.

■■ Plaintiff Bear, as mayor, alleges only that the fluoridation requirement would necessitate great investments that would be financially ruinous to his village. There are no allegations of specific facts alleged which support this claim. The motion to strike and dismiss pointed out that in such capacity he has failed to allege his authority in his official capacity to join his village in this action. Therefore as to plaintiff Bear as mayor, the action was properly dismissed, and paragraph eight of amended Count I should be stricken.

■■ In Count II of the amended complaint the plaintiff George Edward Hiscott IV alleged that he is a member of the Christian Science Church and that the compulsory introduction of fluorides into the water supplies forces him to subject himself to therapeutic treatment by the uses of medicine in direct contradiction to the tenets of his faith. He further alleged that this prohibits him and others of his faith from the free exercise of his religion. This question has not been determined in this jurisdiction and if this case had been decided on the merits, the court might well find that fluoridation is not medication as courts in other jurisdictions have. (See *Graybeal v. McNevin* (Ky.Ct.App. 1969), 439 S.W.2d 323 and the compilation of cases therein.) But this question was decided on the pleadings and assuming the facts are true, then the plaintiff has stated a cause of action.

Plaintiffs, Illinois Pure Water Committee, Inc., Ruby N. Hale, George Edward Hiscott IV and J. O. Bear individually, did allege sufficient facts to state a cause of action and the order of the lower court dismissing their complaint is reversed. Plaintiff J. O. Bear as mayor did not allege facts sufficient to state a cause of action and the order of the lower court as to him in that capacity is affirmed.

Affirmed in part and reversed in part.

EBERSPACHER, J., concurs.

Mr. JUSTICE JONES dissenting:

I must respectfully dissent from the majority opinion.

The plaintiffs are a committee, organized in corporate form, which claims as its concern water quality throughout the State of Illinois, an individual customer of the defendant Alton Water Company, J. O. Bear, who claims to sue as an individual and as "Mayor" of the Village of Pesotum, and George Edward Hiscott, IV, a resident of Highland Park, in Cook County, and a member of the Christian Science Church. All of

the plaintiffs have commenced an action against Dr. Franklin Yoder, Director of the Department of Public Health of the State of Illinois, and all except Hiscott have brought an action against the Alton Water Company. It is not clear what action J. O. Bear, individually, or as Mayor of Pesotum, claims against the Alton Water Company but it appears that all of the plaintiffs claim some representative capacity except Ruby N. Hale, who, at least in part, is supplied water by the Alton Water Company.

No one of these persons or plaintiffs are individually affected by fluoridation of water supply unless it would be Ruby N. Hale, and with respect to her, no special allegations of immediate personal effect upon her health are made.

In substance, the allegations of all of the plaintiffs are based upon their general concern for the health and welfare of residents of the State of Illinois. None of the plaintiffs have any special standing other than what has been set forth above. Apparently leave was given the plaintiff Hiscott to intervene in order to assert that his religious rights are involved. Mr. Hiscott's position is indeed a special one in that he claims that the statute of the State of Illinois violates his constitutional right of freedom of religion, in that it violates the tenets of his faith as practiced by him as an individual. He does not allege that the Christian Science faith is religiously opposed to the use of medicine and pharmaceutical compounds, but apparently that is his own personal religion.

All of the plaintiffs ask for a temporary and permanent injunction against the fluoridation of public water supplies in the State and the declaration of a statute governing fluoridation unconstitutional or, alternately, to enjoin the enforcement of the statute until the Director of the Department of Public Health and the Department of Public Health have adopted rules and regulations in conformity with the mandate of the statute. The complaint also asks an injunction against the Department of Public Health, which is not made a party to the proceeding.

Motions to dismiss were filed by the Director of the Department of Public Health and by the Alton Water Company. As a part of the Director's motion an exhibit was attached setting forth certain rules which were adopted on January 27, 1969, following the complaint, which was filed on August 1, 1968, after which the plaintiffs filed an amendment to the amended complaint alleging that the defendants "intend" to introduce into the public water supply of citizens of the State, fluorine, which is "poisonous, noxious and deleterious," that scientific knowledge has been greatly expanded since 1964 which evidences that fluorides in the quantities being introduced into public water supplies are harmful and injurious; that the present method of fluoridation fails to appreciate

variations in fluorine concentrations, as same depends on temperature and variations in fluorine ingestion in that individuals consume more water in hot weather than in cold, and said variations produce dangerous concentrations of fluorine.

I would affirm the action of the trial judge in granting the motion to dismiss. The plaintiffs, after two amendments, have not asked for further right to amend and the appeal is taken strictly and solely from the order of the trial court dismissing the amended complaint, upon the finding that the complaint fails to state a cause of action upon which the relief sought "should be granted." I understand that the trial court has considered that in taking the allegations of the plaintiffs' complaint as confessed where they are well pleaded he has determined that this is not a case in which plaintiffs are entitled to injunctive relief.

In the traditions of the law it is not every case, even of alleged unconstitutionality, where an injunction will be issued, particularly against state officers in the performance of a public duty. To issue the injunction sought in this case would have the effect of denying all of the citizens of this State fluoridation of public water supplies. The legislature of our State has determined that fluoridation should be permitted, and this determination has withstood lengthy and thoroughgoing legal attack in which all of the points raised in the plaintiffs' complaint, as amended, were raised, except those raised by the plaintiff Hiscott. An attempt by the other plaintiffs to raise a question of deprival of religious freedom is not accompanied by any allegation of fact which puts this matter in issue as to them. I am persuaded that all of the points pertaining to constitutionality of fluoridation have been raised and decided unfavorably to the plaintiffs in *Schuringa v. City of Chicago* (1964), 30 Ill.2d 504, 198 N.E.2d 326 and other cases. The allegation that scientific knowledge has greatly expanded since 1964 is the baldest sort of conclusion. It is common knowledge that scientific tests and information are constantly being accumulated and with respect to any matter it could be said that scientific knowledge has greatly expanded since 1964. That such scientific knowledge "evidences that fluorides in the quantities introduced into public water supplies are harmful and injurious" is totally conclusionary. It does not say in what quantities the plaintiffs claim that fluorides are being introduced into public water supplies nor does it speak to any methodology that may be involved. It does not allege any particular scientific finding which has changed or revealed previous scientific knowledge to be erroneous and unreliable, and it does not say harmful and injurious to whom and on what account.

It is abundantly apparent that certain scientists believed that fluorides,

under certain circumstances, were harmful and injurious to the health of persons ingesting them in water. The passage of the legislation considered in the *Schuringa* case itself did not resolve this scientific controversy. It simply made a choice based on what was determined to be the better view. To say that on the suit of one private citizen, who is directly affected by one water company, that it is necessary for the Director of Public Health to enter into lengthy litigation based upon such a conclusion as is set forth in the plaintiffs' complaint does not seem legitimate or in accordance with logic. Any citizen of this State could make a similar allegation one day after the previous case so that the matter of fluoridation would be under litigation until the end of time. I do not contend, of course, that further scientific consideration of the propriety of fluoridation should be foreclosed. Some future revelation may disprove the currently accepted thought on the matter. The process is not unknown in the field of public health. My point is that the plaintiffs' complaint is silent as to any fresh scientific discovery that bears on the question.

After all, this is not litigation between private persons. The entire concern of the plaintiffs is that there is a possibility that some person or persons in this State will be injured if presently contemplated steps are carried out. It has been an equitable rule from the earliest days that the power to grant injunctive relief is never exercised to ally mere apprehension of injury, or against something merely feared as liable to occur at some indefinite time in the future. "It must appear to the satisfaction of the court that the apprehension is well grounded, and that there is a reasonable probability that a real injury, for which there is no adequate remedy at law, will occur if the injunction is not granted. * * * The court ought not to interfere, however, where the injury apprehended is of a character to justify conflicting opinions as to whether it will in fact ever be realized, or where nothing more than a mere opportunity to do wrong is disclosed." Forty-two American Jurisprudence 2d, Injunctions, Section 31.

Similarly, "As a general rule, equity does not undertake the revision or supervision of governmental action lawfully exercised through the legislative, or executive or administrative, departments of the government. It will not interfere by injunction with the duties of any department of the government except under special circumstances and when necessary to the protection of property or other rights against irreparable injury." (Forty-two American Jurisprudence 2d, Injunctions, Section 175.) Further at page 943, "Where a public officer essays to exercise the jurisdiction conferred upon him, his errors, although subject to subsequent correction, cannot be enjoined as an arbitrary exercise of his

authority. Particularly will courts hesitate to interfere by injunction where the acts complained of are essential to the health and comfort of the people at large."

It should also be noted that the statutory scheme involved provided for hearings with respect to the safety of public water supply when the health of water customers is or may become endangered, under the terms of ch. 111½, sec. 121K, Ill. Rev. Stat., 1967. Such a request could have been made in this particular instance, but there was none.

The only semi-factual allegation contained in the complaint with respect to the direct deficiencies in the present plan for fluoridation is that the proper officials have failed to take into consideration the environmental exposure of citizens of this State to fluorides from sources other than the levels provided to be maintained in the public water supplies. Clearly, if fluorides were found to be present in a water supply because of naturally occurring conditions, and, as a result of the mechanical addition of fluoride as provided by the statute and rules, a dangerous or deleterious concentration of fluoride was created, then this could specifically be presented to the Director with the request that he consider whether fluorine should not be reduced under the particular circumstances. There would be no necessity of enjoining the application of fluorides throughout the State.

It seems to me that one would be wholly unjustified in assuming that a majority of a quorum of the legislature which enacted the legislation, the Governor who signed the legislation into law, and the Director of Public Health are in some sort of a conspiracy to poison the citizens of the State while their backs are turned. I can see no reason for assuming, as the plaintiffs do, that the Director of Public Health would not respond at once if there was some reason for believing that fluorides were about to injure the health of any persons in this State. The complaints of the plaintiffs would, it seems to me, best be directed to the legislature again, rather than directed to the courts who do not have an exclusive corner upon truth. It is not claimed that the Director is acting beyond the legislative mandate and that there is a lack of power. The basic question raised is the wiseness of the legislative enactment and of the effectuating rules as they now stand.

It was originally contended by the plaintiffs that the Director had failed to establish proper implementation of the statute by adoption of rules. From the attachment made to the motion to dismiss filed by the Director it appears that such rules have been adopted. Therefore, this particular point has become moot. If any one particular rule exposed the public to danger this could be alleged, together with factual circum-

stances which would make it applicable, and a cause of action for a legal and, if necessary, equitable action, stated.

I have already eliminated any basis for considering the constitutional claims with respect to violation of freedom of religion on the part of all of the plaintiff's except Hiscott. Hiscott's complaint is only against the defendant Yoder and, therefore, should not be used as a basis for sustaining a right of action against the Alton Water Company. Hiscott is only an intervenor and under the rules applicable to intervention where his claim is not based upon a common question of law he is not entitled to intervene. (Section 26.1 of the Civil Practice Act; Ill. Rev. Stat., ch. 110, sec. 26.1.) Further, an intervenor does not have the right to raise new issues. (Chapter 110, section 26.1(6); Ill. Rev. Stat., ch. 110, sec. 26.1(6).) Therefore, the intervenor's claims cannot be the basis for this action.

With respect to claims of loss of freedom of religion it seems apparent that claims of religious right which conflict with the general or common health and good must yield to the common health and good. One can readily visualize a religious belief which would oppose a central government or any practice having to do with public health or, as is contended here, is opposed to any "use of * * * pharmaceutical compounds." It is obvious that no introduction of pharmaceuticals into the public water supply can meet the requirements of this religious belief. Under such contention treatment of public water supplies becomes an impossibility. It seems to me that this particular plaintiff may have full religious freedom only if he does not make use of a public water supply. His objection to consuming treated water from the public supply can easily be met by his use of untreated water from readily available private sources. In the same manner consumption of foodstuffs from ordinary sources of the public food supplies are avoided by those whose religious beliefs permit the consumption of only those foodstuffs prepared by persons possessing particular religious qualifications.

Even if it be conceded (which I do not) that plaintiff Hiscott has standing to raise his point, I would still uphold the trial court in its dismissal of the Hiscott portion of the complaint. It is unnecessary to have an evidentiary hearing on the issue in order to resolve it. In the posture it is presented it is purely a question of law. Simply stated, the issue raised by plaintiff Hiscott is whether it is the law in Illinois that fluoridation of a public water supply deprives plaintiff of his constitutionally guaranteed freedom of religion. Manifestly it does not. It was so determined in *Graybeal v. McNeven* (Ky.Ct. of Appeals, 1969), 439 S.W.2d 323 and in fourteen other States (as cited in the *Graybeal* case). While it is true that these cases are not binding on Illinois courts they neverthe-

less foretell the determination here. *Talty v. Schoenholz*, 323 Ill. 232, 154 N.E. 139; Illinois Law & Practice, Courts, Sec. 84.

In short, the legitimate contentions of the plaintiffs can only be carried out by the abolition of fluoridation or by the assumption that either the Director of the Department of Public Health or those persons charged with the processing of water will behave unlawfully or so as to expose the public to poisoning. No tribunal can rule out the possibility that someone, somewhere might not be exposed to fluorine in unhealthy concentrations. The best that can be done is to establish a policy of permissible concentrations and then adopt rules intended to carry out this plan. It appears on the face of the matter that such has been done. As was quoted in *Sutton v. Findlay Cemetery Association*, 270 Ill. 11, 110 N.E. 315, "Relief by injunction is so severe in its consequences that it is not to be granted in such a case except when the right to it is clearly and conclusively made out."

In this way, the trial court, being confronted with the question of balancing the public health and safety, as defined in a statute and statutory regulations, against the claim of constitutional invasions, is placed in the position of weighing right against right. Where the party against whom the action is brought is a public officer acting within the framework of the statutory plan, which has been previously tested for its constitutionality, and the rights sought to be protected are alleged as conclusions, the damage or injury described appears relatively improbable of occurrence, and the interests of the parties plaintiff do not involve major invasions but are only those held by any member of the public, the complaint does not state a cause of action nor evidence plaintiffs' right to injunctive relief. Therefore, under the allegations of the complaint here I would affirm that the complaint does not set up circumstances under which the use of injunctive power is clearly justified.

The point involved is not only one of pleading, it is also one of the balance of constitutional rights. As was said in an earlier case from Madison County, Illinois (*Spalding v. City of Granite City*, 415 Ill. 274, 113 N.E.2d 567):

"The constitutional guaranties that no person shall be deprived of life, liberty, or property without due process of law, and that no State shall deny to any person within its jurisdiction the equal protection of the laws, were not intended to limit the subjects upon which the police power of the State may lawfully be asserted in matters of health protection any more than in any other connection. It has been almost universally held in this country that the constitutional guaranties, including the prohibition of deprivation of property without due process, must yield to the statutes and ordinances designed to promote the

public health as a part of the police powers of the State. (*People ex rel. Baker v. Strautz*, 386 Ill. 360; *People v. Anderson*, 355 Ill. 289; *City of Evanston v. Wazau*, 364 Ill. 198.)"

Further, in *People ex rel. Baker v. Strautz*, 386 Ill. 360, 54 N.E.2d 441, our Supreme Court said:

" 'Generally speaking, what laws or regulations are necessary to protect public health and secure public comfort is a legislative question, and appropriate measures intended and calculated to accomplish these ends are not subject to judicial review. The exercise of the police power is a matter resting in the discretion of the Legislature or the board or tribunal to which the power is delegated, and the courts will not interfere with the exercise of this power except where the regulations adopted for the protection of the public health are arbitrary, oppressive and unreasonable. The court has nothing to do with the wisdom or expedience of the measures adopted. *People v. Weiner*, 271 Ill. 74, 110 N.E. 870, L.R.A. 1916C, 775, Ann.Cas. 1917C, 1065; *State v. Morse*, 84 Vt. 387, 80 A. 189, 34 L.R.A., N.S., 190, Ann. Cas. 1913B, 218; *State v. Superior Court*, 103 Wash. 409, 174 P. 973.'

It has almost universally been held in this country that constitutional guaranties must yield to the enforcement of the statutes and ordinances designed to promote the public health as a part of the police powers of the State."