(No. 27200.—

THE PEOPLE *ex rel.* Melba R. Baker *et al.,* Petitioners, *vs.* SAM STRAUTZ, Chief of Police, Respondent.

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

MacDonald, Meyer & Meyer, of East St. Louis, for petitioners.

George F. Barrett, Attorney General, (William C. Wines, of counsel,) for respondent.

Mr. Justice Fulton delivered the opinion of the court:

This cause arises upon the original petition of Melba R. Baker and Marlin Ronen for a writ of *habeas corpus*.

On March 8, 1943, the petitioners were arrested in East St. Louis, Illinois, and placed in the city jail. The next morning complaints were filed before a justice of the peace charging that each "wilfully and unlawfully solicited to prostitution" and "wilfully and unlawfully was a lewd and lascivious person in speech and character." On the same day an order was entered by the justice of the peace that it appearing that each of the petitioners may be suffering from a communicable venereal disease, they are hereby held for the clinic. No bond was fixed by the justice of the peace.

Each of the petitioners refused to be examined by doctors or a clinic of any kind on the ground that it was an invasion of their rights and contrary to the constitu-

tions and statutes of the United States and State of Illinois. On this same day each of the petitioners filed a petition for writ of *habeas corpus* in the city court of East St. Louis and upon hearing were remanded to the custody of the chief of police, the court holding the offense was not bailable. The next day petitioners filed their petitions for writ of *habeas corpus* in the circuit court of St. Clair county, and on March 12 an order was entered in the circuit court denying the petition and remanding petitioners to the chief of police of East St. Louis until petitioners submitted to an examination, and further providing that if they submitted to examination by the East St. Louis Health Clinic and such clinic reports that they are not afflicted with any communicable venereal disease, that bail for the petitioners would be fixed by the court.

On March 14, an original petition for writ of *habeas corpus* was filed in this court, which petition was allowed, and a return made thereon and bail fixed by this court at $1000 each, which the petitioners have given, and they were thereby released from custody.

It appears that petitioners were ordered held for the clinic under the provisions of section 4 of an act entitled, "An Act to enable counties or cities to segregate and treat persons suffering from certain communicable diseases," approved June 28, 1919, (Ill. Rev. Stat. 1943, chap. 23, par. 392,) which section provides as follows: "When it appears to any judge or justice of the peace from the evidence or otherwise that any person coming before him on any criminal charge may be suffering from any communicable venereal disease, it shall be the duty of such judge or justice of the peace to refer such person to the director of such hospital, sanitarium, or clinic, or to such officer as shall be selected or appointed for the purpose of examining the accused person, and if such person be found to be suffering from any communicable venereal disease, he or she may by order of the court, be sent for treatment

to a hospital, sanitarium or clinic if any be available and if necessary to be segregated for such term as the court may impose at such hospital, sanitarium or clinic."

The petitioners, for the purpose of this case, agree that the arrests, complaints and warrants were legal and proper.

Petitioners contend that:

1. Section 4 of the act above quoted is unconstitutional and void in depriving the petitioners of their liberty without due process of law under section 1 of amendment XIV of the constitution of the United States and section 2 of article II of the constitution of the State of Illinois; that section 4 contains subjects not expressed in the title of the act; that the section violates section 7 of article II of the constitution of the State of Illinois in denying bail to the petitioners when they are not charged with a capital offense; that it violates section 9 of article II of the Illinois State constitution in that it denies the petitioners the right to be heard in answer to the criminal charges and defend in person and to demand the nature and cause of the accusation and denies them the right to a speedy and public trial.

2. If section 4 is valid, then the order of the justice of the peace is void for the same reasons set forth as stated in 1 above.

3. The petitioners have been and are being illegally held in custody in violation of the fifth, sixth and seventh amendments of the United States constitution and article II of the constitution of the State of Illinois.

The petitioners in their statement, brief and argument have failed to argue their case, except to state that the said statute is unconstitutional, having left the argument up to the respondent and having confined their arguments to a reply to the brief of the respondents.

The questions involved in this litigation are of supreme importance not only to the individuals involved, but to the citizens of the State of Illinois and to the State itself.

Measures to prevent the spread of dangerous communicable diseases and to provide for the isolation, segregation and treatment of those diseased are as old as history itself.

The power to detain a person who is suspected of having a contagious disease rests in the police power of the State. When a State employs its police power to safeguard the public health it may act in a summary manner even though the result is to deprive a citizen of his liberty. Such powers were recognized and approved in *People ex rel. Barmore* v. *Robertson*, 302 Ill. 422, at page 427, where we held: "Among all the objects sought to be secured by governmental laws none is more important than the preservation of public health. The duty to preserve the public health finds ample support in the police power, which is inherent in the State and which the State cannot surrender. Every State has acknowledged power to pass and enforce quarantine, health and inspection laws to prevent the introduction of disease, pestilence and unwholesome food, and such laws must be submitted to by individuals for the good of the public. The constitutional guaranties that no person shall be deprived of life, liberty or property without due process of law, and that no State shall deny to any person within its jurisdiction the equal protection of the laws, were not intended to limit the subjects upon which the police power of a State may lawfully be asserted in this any more than in any other connection. (12 R. C. L. 1271; *Booth* v. *People*, 186 Ill. 43; *State* v. *Robb*, 100 Me. 189, 60 Atl. 874; *Kirk* v. *Wyman*, 83 S. C. 372, 65 S. E. 387; *Ayers* v. *State*, 178 Ind. 453, 99 N. E. 730.) Generally speaking, what laws or regulations are necessary to protect public health and secure public comfort is a legislative question, and appropriate measures intended and calculated to accomplish these ends are not subject to judicial review. The exercise of the police power is a matter resting in the discretion of the legislature or the board or tribunal to which the power is dele-

gated, and the courts will not interfere with the exercise of this power except where the regulations adopted for the protection of the public health are arbitrary, oppressive and unreasonable. The court has nothing to do with the wisdom or expediency of the measures adopted. *People* v. *Weiner*, 271 Ill. 74; *State* v. *Morse*, 84 Vt. 387, 80 Atl. 189; *State ex rel. McBride* v. *Superior Court*, 103 Wash. 409, 174 Pac. 973."

It has almost universally been held in this country that constitutional guaranties must yield to the enforcement of the statutes and ordinances designed to promote the public health as a part of the police powers of the State. *In re McGee*, 105 Kan. 574, 185 Pac. 14, and *State ex rel. McBride* v. *Superior Court*, 103 Wash, 409, 174 Pac. 973.

That the statute in question is a measure enacted within the police power of the State of Illinois is unquestioned. In the *McBride case*, a similar detention was ordered under an ordinance providing for examination of "all persons who are taken into custody by the police department of the city, who are suspected of being afflicted with any contagious or infectious disease or malady." In that case Frances Williams, the relator, was arrested charged with the violation of a city ordinance and was turned over to the health commissioner of the city for examination. She was found to be afflicted with a dangerous venereal disease and committed to the isolation hospital of the city and detained there for treatment. She sued out a writ of *habeas corpus* in the Supreme Court of Washington and in her petition among other things alleged that she was arrested without any warrant; that the charge against her was unfounded and untrue and that the city had no power to pass the ordinance. In a lengthy and well-considered opinion that court held: "The power to detain one who is suspected of having a contagious disease rests in the police power, and to this extent the authority of the commissioner is not challenged, but the right to restrain a sub-

ject without judicial review is vehemently denied." The court also stated the general rule to be as follows: "* * * the public health is the highest law; and whenever a police regulation is reasonably demonstrated to be a promotor of public health, all constitutionally guaranteed rights must give way, to be sacrificed without compensation to the owner. Tiedeman, State & Fed. Control of Persons and Property, Sec. 169."

In *Ex Parte Company*, 106 Ohio State 50, 139 N. E. 204, the Supreme Court of Ohio rejected the constitutional objections of two women who were quarantined for venereal disease. Among the many pronouncements of the court in that opinion are: "Regulation 23 empowers the health commissioner of each city to make examination of persons reasonably suspected of having a venereal disease. All known prostitutes and persons associating with them shall be considered as reasonably suspected of having a venereal disease. * * * The protection of the health and lives of the public is paramount, and those who by conduct and association contract such disease as makes them a menace to the health and morals of the community must submit to such regulation as will protect the public."

In *Zucht* v. *King*, 260 U. S. 174, 67 L. ed. 194, 43 Sup. Ct. 24, it was held that a municipal ordinance is not invalid because it delegates to the board of health authority to determine when vaccination shall be enforced, without providing any rule for the guidance of the board.

While the legislature through its police powers can delegate to boards of health and municipalities authority to regulate and control all matters which tend to preserve the public health, such regulations cannot be arbitrary, oppressive and unreasonable. Section 4 of the statute here in question giving a justice of the peace from the evidence "or otherwise" power to detain persons suspected of having a venereal disease does not mean that he has any authority outside of the evidence appearing before him. The power

to compel any person arrested on any criminal charge to submit to an examination by a clinic or a medical official is limited to a criminal case in which evidence is produced or circumstances develop tending to indicate that the person charged may reasonably be suspected of being afflicted with a communicable venereal disease and must, from its very nature, present sufficient evidence upon which the justice of the peace may issue the order referring the party to some medical officer for such examination. The words in said section 4 authorizing the justice of the peace to refer the accused person to "such officer as shall be selected" means that the party must be sent to some hospital, sanitarium, clinic, or to some recognized medical officer who will properly represent both the accused person and the municipality.

It may be pointed out that a veneral disease most often exists within the veil of secrecy. Certainly one who is charged with soliciting to prostitution and one of lewd and lascivious character is one who may first be suspected of carrying such dreadful affliction. It is most reasonable to suspect that both of the petitioners, if carrying on the practice of prostitution, are indiscriminate and promiscuous in their bodily contacts and are natural subjects and carriers of venereal disease. In the instant case it was therefore logical and natural that suspicion immediately be cast upon them and necessity dictate a physical examination of their persons. The citizens of East St. Louis, the war workers and soldiers in its vicinity are entitled to protection against social diseases. Petitioners furthermore have agreed, for the purpose of this suit, that their arrest was legal and proper, that the complaints later filed and the warrants issued likewise are legal and proper. Such being the case, their detention for examination by the clinic as suspects carrying venereal diseases is likewise reasonable and proper.

The contention that the act violates the constitution of the United States and the constitution of the State of

368

Illinois is not supported by authority. The fourteenth amendment to the United States constitution does not limit the States in the proper exercise of police power, sufficient authority therefor being found in the *Slaughterhouse cases,* 16 Wall. 36, 21 L. ed. 394, and in *Holden* v. *Hardy,* 169 U. S. 366, 42 L. ed. 780.

A mere reading of the title and the act immediately demonstrates that the title properly describes the subjects contained in the statute.

Section 4 violates no part of the Criminal Code since it is based upon the police power of the State and does not fall within the provisions of the Criminal Code. This likewise answers the contention that the petitioners were held without bail, since quarantine under the police provisions naturally implies such a detention and demands it.

For the reasons hereinabove stated, the petition for discharge under the writ of *habeas corpus* will be denied and the petitioners remanded to the custody of the chief of police of the city of East St. Louis, until they submit to an examination under the provisions of section 4.

*Petitioners remanded.*