Libby, McNeill & Libby, Appellant, vs. Department of Taxation, Respondent.*

*January 8—February 5, 1952.*

* Motion for rehearing denied, without costs, on April 8, 1952.

For the appellant there was a brief by *Ela, Christianson & Ela, G. Burgess Ela,* and *Walter P. Ela,* all of Madison, attorneys, and *Lyndle W. Hess* and *F. Postin White,* both of Chicago, Illinois, of counsel, and oral argument by *Walter P. Ela.*

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

GEHL, J. The applicable statutory provisions are contained in sec. 71.16, Stats. 1947:

"71.16. *Privilege dividend tax.* (1) For the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state, there is hereby imposed a tax equal to three per cent of the amount of such dividends declared and paid by all corporations (foreign and local), except those specified in section 71.01 (3) (a) and (c), after September 26, 1935, and prior to July 1, 1949. Such tax shall be deducted and withheld from such dividends payable to residents and nonresidents by the payor corporation. . . .

"(4) In the case of corporations doing business within and without the state of Wisconsin, such tax shall apply only to dividends declared and paid out of income derived from business transacted and property located within the state of Wisconsin. The amount of income attributable to this state shall be computed in accordance with the provisions of chapter 71. In the absence of proof to the contrary, such dividends shall be presumed to have been paid out of earnings of such corporation attributable to Wisconsin under the provisions of chapter 71, for the year immediately preceding the payment of such dividend. If a corporation had a loss for the year prior to the payment of the dividend, the department of taxation shall upon application, determine the portion of such dividend paid out of corporate surplus and undivided profits derived from business transacted and property located within the state."

We agree with petitioner that the presumption created in sub. (4) of sec. 71.16, Stats., is rebuttable. By clear

language it provides that it shall prevail "in the absence of proof to the contrary." Petitioner contends that it has overcome the presumption by its proof of the existence throughout the period involved of a deficit from Wisconsin operations and of the fact that all dividends involved were declared and paid out of its over-all earned surplus.

Although, as stated above, petitioner's Wisconsin operations produced a profit during each of the years immediately preceding the years 1944, 1945, and 1946 in excess of the amount of dividends paid, it did not withhold and pay to the state the privilege dividend taxes thereon. Its omission resulted from its reliance upon the decision of this court in *J. C. Penney Co. v. Tax Comm.* 238 Wis. 69, 298 N. W. 186, announced on May 20, 1941. In that case it was held that where a corporation doing business both within and without the state, has a year of profitable operation in Wisconsin after several years of loss in those operations, carries the year's profit to its surplus account, and in the succeeding year declares and pays a dividend, no privilege dividend tax is payable on the dividends declared. Until the decision in *Department of Taxation v. Nash-Kelvinator Corp.* 250 Wis. 533, 27 N. W. (2d) 889, on June 10, 1947, the department followed and applied the rule of the *J. C. Penney Co. Case.*

In the *Nash-Kelvinator Corp. Case, supra,* the court reversed its position and held that the statutory presumption that dividends have been paid out of the preceding year's Wisconsin operation is not overcome by showing that such earnings were carried into the corporation's surplus account. The department contends that the rule of the *Nash-Kelvinator Corp. Case* is applicable here. Petitioner contends that the present case is distinguishable from the *Nash-Kelvinator Corp. Case* in that in the latter it was shown that there was sufficient accumulated Wisconsin income in the corporation's surplus account to pay the portion of

dividend derived from Wisconsin income computed by either surplus analysis or the statutory presumption, whereas here there were accumulated losses from its earlier Wisconsin operations.

In the absence of proof to the contrary a presumption exists that dividends are paid out of earnings, and the statute does not relieve the corporation of its obligation to deduct and pay because of the manner in which its earnings are applied or recorded upon its books. The statutory presumption is "conclusive to the extent that if the previous year's earnings were sufficient to pay the dividends paid by the taxpayer during any year the bookkeeping practice of carrying the same into surplus before the dividends are paid does not overcome the presumption that they were paid from the previous year's earnings." *Department of Taxation v. Nash-Kelvinator Corp., supra* (p. 536).

This is not to say, as petitioner contends, that if a dividend is paid from surplus and is still taxable, the door is closed to proof in rebuttal of the statutory presumption. Our conclusion is simply that such proof does not rebut the presumption.

The more serious question is: Is the state under the circumstances estopped to assert its claim? Having acquiesced, in accordance with the decision in the *Penney Co. Case* in petitioner's omission to deduct and pay the tax during the years involved, may it now, since that case was overruled in 1947 by the decision in the *Nash-Kelvinator Case,* compel the corporation to pay out of its own funds the tax which it would otherwise have deducted from dividends paid to its stockholders?

While it is sometimes stated as a general proposition that a governmental agency is not subject to an estoppel to the same extent as an individual, the doctrine has been permitted to be invoked under some circumstances, such as where the act of the agency may make up a species of fraud, *State ex*

*rel. Attorney General v. Janesville Water Co.* 92 Wis. 496, 66 N. W. 512, in the case of inequitable conduct of the agency, *Superior v. Northwestern Fuel Co.* 164 Wis. 631, 161 N. W. 9, where the conduct of the agency has caused the party asserting the estoppel in good faith to change his position in such a way that loss would ensue to him if the estoppel cannot be effectively interposed, *Eau Claire Dells Imp. Co. v. Eau Claire,* 172 Wis. 240, 179 N. W. 2, where the party asserting the estoppel has been misled in respect to taxes assessed by information given by an officer acting within the scope of his authority. 51 Am. Jur., Taxation, p. 846, sec. 966.

In this case the petitioner, relying upon a ruling of this court and with the acquiescence of the taxing authorities, omitted to deduct and pay to the state the tax from dividends paid to its stockholders. Now, having parted with the money, it is asked to pay. This is not a case where the petitioner is merely seeking to avoid payment of a tax and there is nothing else involved, as were *Laabs v. Tax Comm.* 218 Wis. 414, 261 N. W. 404, and *Miller v. Department of Taxation,* 241 Wis. 145, 5 N. W. (2d) 749. In the former the court said that to compel the taxpayer to pay a tax which the state was entitled to collect did not work a hardship upon him; the contrary is true here. In the latter case there was no showing that the taxpayer had changed his position in reliance upon the act of any agency of the state; here the petitioner did.

In *Grunert v. Spalding,* 104 Wis. 193, 80 N. W. 589, this court held that the state is not bound or estopped by a construction placed upon a contract by a state officer when he is not authorized to act for the state in that respect. Is it unreasonable to ask whether the state is estopped by a construction placed upon a statute by an agency authorized to act for the state—the supreme court?

It is stated that "the overruling of a [judicial] decision generally is retrospective and makes the law at the time of the overruled decision as it is declared to be in the last decision," 21 C. J. S., Courts, p. 326, sec. 194, that the later decision of the same court is a declaration "not that the former is bad law, but that it never was the law." The application of this rule would seem to prevent reversal in this case. It might, were it not for the fact that the case calls for application of the doctrine of estoppel also. The earlier decision should be resorted to, not because it is still considered to be the law, but because its declaration caused petitioner to act to its prejudice, to change its position in good faith in reliance thereon and upon the acquiescence of the state's taxing authorities in its conduct. And as was stated by Mr. Justice CARDOZO in the case of *Great Northern R. Co. v. Sunburst Oil & Ref. Co.* 287 U. S. 358, 364, 53 Sup. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254: "It [a state] may say that decisions of its highest court, though later overruled, are law nonetheless for intermediate transactions. Indeed there are cases intimating, too broadly (cf. *Tidal Oil Co. v. Flanagan,* 263 U. S. 444, 44 Sup. Ct. 197, 68 L. Ed. 382), that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted."

To hold, as we do here, that under the circumstances the doctrine of estoppel applies as against the state does not conflict with any of the prior declarations of the court. In fact, although it does not appear that the court has been called upon to consider the applicability of the doctrine to similar factual situations, it has, by implication at least, recognized that a governmental agency may be estopped even where it acts in its governmental capacity. In *Chicago, St. P., M. & O. R. Co. v. Douglas County,* 134 Wis. 197, 212,

114 N. W. 511, an action to set aside tax deeds, the doctrine was sought to be invoked. It was not allowed, but the court pointed out that,

"The plaintiff was not and does not claim to have been misled or deceived into failing to pay its taxes by the act of the state."

In that case it was said also, and in a number of jurisdictions it has been affirmed, that an equitable estoppel can be applied to the government. If the instant case were one involving only the question of the state's taxing power, as was the *Douglas County Case,* we should be compelled to reject, as the court did there, petitioner's contention for the application of the doctrine of estoppel. But, as we have pointed out, there are other principles involved here.

*State ex rel. Attorney General v. Janesville Water Co., supra,* was an action brought to annul the franchise of a corporation. The defendant sought to invoke the doctrine of estoppel by laches and lapse of time. The court said (p. 504):

"While time does not run against the state, time, together with other elements, may make up a species of fraud, and estop even sovereignty from exercising its legal rights. . . . we hold that delay in moving for leave to commence the action, with the other elements referred to, constitutes, on this application for the exercise of the discretionary power of the court, an effectual waiver of the harsh and extraordinary remedy of proceedings under the statute to forfeit the franchises of the company, and that this application should therefore be denied."

The term "fraud" used by the court is not to be construed here as it is used in the ordinary sense—as an artifice, a malevolent act, or a deceitful practice.

"The meaning here [in the application of the doctrine of estoppel] given to fraud or fraudulent is virtually synony-

mous with 'unconscientious' or 'inequitable.' " 2 Pomeroy, Eq. Jur. (4th ed.), p. 1640, sec. 803.

True, the doctrine of estoppel is not applied as freely against governmental agencies as it is in the case of private persons. But we conclude that the undisputed facts in this case call for the application of the doctrine because the previous conduct of the department, motivated if not compelled by the pronouncement of the state's highest court, caused petitioner in good faith to change its position in such a way that an inequitable result would ensue to it if the estoppel were denied.

We are not the first to permit application of the doctrine of estoppel against the state under similar circumstances. *La Societe Francaise v. California Employment Comm.* 56 Cal. App. (2d) 534, 133 Pac. (2d) 47, was an action brought to recover taxes paid under protest by the plaintiff to the California employment commission under the provisions of California's Unemployment Insurance Act. Under that act the employer was required to deduct from its employees' wages certain amounts and the employer itself was required to contribute and pay into the state fund. The plaintiff sought to recover both contributions upon the ground that it was exempt as an exclusively charitable institution.

Acting under a ruling of the defendant, later revoked, that it was exempt from the payment of the tax, the plaintiff concluded that it was not liable, but after demand made paid the tax with interest and penalties under protest. The court held that plaintiff was not an exclusively charitable organization and, therefore, not exempt from the tax.

The court recognized the general rule that the government does not lose its revenues because of an erroneous ruling of an administrative official as to the meaning of a tax law. It held that the plaintiff might not recover what it itself should have paid under the law, but that since it did not

deduct from its employees the amount of their required contribution the plaintiff could, because of the doctrine of estoppel, recover that portion which might have been deducted from the employees. Certiorari denied, 320 U. S. 736, 64 Sup. Ct. 35, 88 L. Ed. 436.

Quoting from 48 Harvard Law Review, 1299, the court says:

"If we say with Mr. Justice HOLMES, 'Men must turn square corners when they deal with the government,' it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens."

A similar case resulting in a similar conclusion is *Waterbury Savings Bank v. Danaher,* 128 Conn. 78, 20 Atl. (2d) 455, where, in reliance upon the advice of the administrator of the Connecticut Unemployment Compensation Act, the plaintiff bank had omitted to deduct from its employees' wages their contribution to the fund set up under the provisions of the act, and had paid neither its own nor the employees' required contribution to the fund. Later the administrator changed his position and demanded payment. The court held that there would be liability to pay the tax were it not for the administrator's conduct, and that the doctrine of estoppel was applicable. It is interesting to note that the court absolved the bank, not only with respect to the amounts which it had not withheld from its employees, but also as to the amount which the bank itself might otherwise have been required to contribute from its own funds.

It does not seem to us that when a court has recognized the right in a taxpayer to invoke the doctrine of estoppel against the state when acting in reliance upon the ruling of an administrative agency it should be denied such right when acting upon reliance of a pronouncement of the highest court of his state.

We conclude that the state is estopped to assess the tax against petitioner.

*By the Court.*—Judgment reversed.