57 So.2d 648 (1952)
MOORE
v.
DRAPER.
Supreme Court of Florida, Division B.
March 21, 1952.
Donald Moore, pro. per.
Richard W. Ervin, Atty. Gen., Reeves Bowen, Asst. Atty. Gen., and Rhydon C. Latham, Jacksonville, for respondent.
MATHEWS, Justice.
This is a case of original jurisdiction.
The petitioner was confined in the Southwest Florida State Sanitarium at Tampa pursuant to a commitment issued by the County Judge of Dade County, under the provisions of Chapter 25241, Laws of 1949, same being Sections 392.17-392.23, F.S.A.
The petitioner claims that the statute in question is unconstitutional and that his confinement thereunder is unlawful, a denial of due process of law, and further alleges as follows:
"1. The statute abridges the constitutional guaranteed right to freedom and violates the due process clause of the 14th Amendment to the United States Constitution.
"2. The statute imposes indefinite loss of liberty for reasons other than conviction of crime.
"3. The statute fails to provide any definite or mandatory form of release.
"4. The statute discriminates against all persons other than those of a certain religious faith and belief. Sec. 392.23 Fla. St., 1949."
Recent history of public health matters shows that tuberculosis was recognized as one of the most dreadful diseases and one of the greatest killers. The State has spent millions of dollars prior to 1949 in an attempt to minimize as far as possible the spread of this terrible disease. It had established a few hospitals and clinics and had carried on a program of detection, education and advice. It was recognized that those afflicted with this disease were a menace to society. They walked the streets; went to public places such as theatres, hotels and restaurants; they rode in common carriers; in their homes and other places they came in close contact with relatives and friends and the general public. They not only suffered themselves, but left disease, misery, sorrow and death in their wake.
Prior to 1949 the Legislature had not enacted any law for compulsory confinement or quarantine with reference to people afflicted with this disease. The real reason why no such law had been passed prior to that time was because there were not sufficient hospitals or sanitaria provided by the state to properly take care of these people. It would have been useless to enact a law for compulsory confinement or quarantine without the state providing adequate facilities to carry into effect such a law. *649 The need had been recognized for many years. The Legislature was confronted with the conflicting demands to provide adequate facilities in the promotion of public health and the general welfare on the one hand and the clamor not to increase taxes but to reduce taxes on the other hand.
Vital statistics showed that tuberculosis was taking an awful toll. The death rate was startling. In 1949 it was recognized that the Legislature would probably levy sufficient taxes and appropriate sufficient money to erect suitable sanitaria where people suffering with tuberculosis could be confined and treated. This law was enacted by the Legislature in anticipation that sufficient facilities would be provided. The Cigarette Tax Law, F.S.A. § 210.01 et seq., provided sufficient funds to carry on this work and some of the sanitaria have already been completed and others are nearing completion.
In the case of People v. Robertson, 302 Ill. 422, 134 N.E. 815, 817, 22 A.L.R. 835, the court said:
"The health of the people is unquestionably an economic asset and social blessing, and the science of public health is therefore of great importance. Public health measures have long been recognized and used, but the science of public health is of recent origin, and with the advance of the science methods have been greatly altered. The results to be obtained by scientific health regulations are well illustrated by the remarkable changes made in health conditions in Cuba and Panama. With the increase of population the problem of conserving the health of the people has grown, and public health officers and boards have been appointed for the purpose of devising and enforcing sanitary measures.
"That the preservation of the public health is one of the duties devolving upon the state as a sovereign power will not be questioned. Among all the objects sought to be secured by governmental laws none is more important than the preservation of public health. The duty to preserve the public health finds ample support in the police power, which is inherent in the state, and which the state cannot surrender. Every state has acknowledged power to pass and enforce quarantine, health, and inspection laws to prevent the introduction of disease, pestilence, and unwholesome food, and such laws must be submitted to by individuals for the good of the public. The constitutional guaranties that no person shall be deprived of life, liberty, or property without due process of law, and that no state shall deny to any person within its jurisdiction the equal protection of the laws, were not intended to limit the subjects upon which the police power of a state may lawfully be asserted in this any more than in any other connection. 12 R.C.L. 1271; Booth v. People, 186 Ill. 43, 57 N.E. 798, 50 L.R.A. 762, 78 Am.St.Rep. 229; State v. Robb, 100 Me. 180, 60 A. 874, 4 Ann.Cas. 275; Kirk v. Wyman, 83 S.C. 372, 65 S.E. 387, 23 L.R.A.,N.S., 1188; Ayres v. State, 178 Ind. 453, 99 N.E. 730, Ann.Cas. 1915C, 549.
"Generally speaking, what laws or regulations are necessary to protect public health and secure public comfort is a legislative question, and appropriate measures intended and calculated to accomplish these ends are not subject to judicial review. The exercise of the police power is a matter resting in the discretion of the Legislature or the board or tribunal to which the power is delegated, and the courts will not interfere with the exercise of this power except where the regulations adopted for the protection of the public health are arbitrary, oppressive and unreasonable. The court has nothing to do with the wisdom or expediency of the measures adopted. People v. Weiner, 271 Ill. 74, 110 N.E. 870, L.R.A. 1916C, 775, Ann.Cas. 1917C, 1065; State v. Morse, 84 Vt. 387, 80 A. 189, 34 L.R.A.,N.S., 190, Ann.Cas. 1913B, 218; State v. Superior Court, 103 Wash. 409, 174 P. 973."
In the case of Varholy v. Sweat, 153 Fla. 571, 15 So.2d 267, 269, an appeal was taken from an order in a habeas corpus proceeding before the Circuit Judge in Duval County. The appellant was confined by the Sheriff upon orders of the Health Officer because she had an infectious or *650 contagious disease. This court in an unanimous opinion, speaking through Justice Brown, said:
"Generally speaking, rules and regulations necessary to protect the public health are legislative questions, and appropriate methods intended and calculated to accomplish these ends will not be disturbed by the courts. All reasonable presumptions should be indulged in favor of the validity of the action of the legislature and the duly constituted health authorities. But the constitutional guarantees of personal liberty and private property cannot be unreasonably and arbitrarily invaded. The courts have the right to inquire into any alleged unconstitutional exercise or abuse of the police powers of the legislature, or of the health authorities in the enactment of statutes or regulations, or the abuse or misuse by the Boards of Health or their officers and agents of such authority as may be lawfully vested in them by such statutes or regulations.
"However, the preservation of the public health is one of the prime duties resting upon the sovereign power of the State. The health of the people has long been recognized as one of the greatest social and economic blessings. The enactment and enforcement of necessary and appropriate health laws and regulations is a legitimate exercise of the police power which is inherent in the State and which it cannot surrender. The Federal government also possesses similar powers with respect to subjects within its jurisdiction. The constitutional guarantees of life, liberty and property, of which a person cannot be deprived without due process of law, do not limit the exercise of the police power of the State to preserve the public health so long as that power is reasonably and fairly exercised and not abused. The legislative authority in this legitimate field of the police power, like as in other fields, is fenced about by constitutional limitations, and it cannot properly be exercised beyond such reasonable interferences with the liberty of action of individuals as are really necessary to preserve and protect the public health. * * *
"It might be noted that after making its order the Court announced that when the petitioner was cured he would reduce the bond set by the Justice of the Peace in the criminal proceeding probably to one hundred dollars, or some other nominal sum."
Petitioner makes a special attack upon the law on the ground that it discriminates against all persons other than those of a certain religious faith and belief. Section 392.23, Subsection (2), F.S.A. is sufficient protection and guarantee that his religious freedom is not being denied to him. Religious freedom cannot be used as a cloak for any person with a contagious or infectious disease to spread such disease because of his religion.
All questions raised in this petition have been carefully considered and we do find the Act to be a proper exercise of the police power, and not violative of Petitioner's constitutional rights.
When the Petitioner feels that he has been cured or that his disease has been so arrested that he is not and will not be dangerous to others, the Courts of the State will be open to him and he should be afforded ample opportunity to obtain his release, if an examination, scientific tests and other evidence justifies it.
The petition for writ of habeas corpus is denied, but without prejudice to the right of the petitioner to take appropriate action in seeking his release in any of the courts of this state having jurisdiction over him and the subject matter, when he conceives that he is able to come under the terms of the preceding paragraph of this opinion. See Varholy v. Sweat, supra.
SEBRING, C.J., and CHAPMAN and ROBERTS, JJ., concur.