STATE, Respondent, vs. SENSENBRENNER, Appellant.

*May 9—June 3, 1952.*

120

For the appellant there was a brief by *Sweberg & Kruschke* of Rhinelander, and oral argument by *John E. Kruschke.*

For the respondent there was a brief by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

CURRIE, J. The question presented on this appeal is whether the provisions of secs. 31.23 (1) and 31.25, Stats., are applicable to a beaver dam erected in a navigable stream by the action of beaver unaided by any affirmative act of the riparian owner. The applicable portions of these two statutes are as follows:

Sec. 31.23 (1) "Every person or corporation that shall obstruct any navigable waters and thereby impair the free navigation thereof, or shall place therein or in any tributary thereof any substance whatever that may float into and obstruct any such waters or impede their free navigation, or shall construct or maintain, or aid in the construction or maintenance therein of any bridge, boom, or dam not authorized by law, shall forfeit for each such offense, and for each day that the free navigation of such stream shall be obstructed by such bridge, boom, dam, or other obstruction, a sum not exceeding fifty dollars."

Sec. 31.25 "Every dam, . . . constructed or maintained in or over any navigable waters of this state in violation of the provisions of this chapter or of chapter 30, and every dam not furnished with a slide, chute, or other equipment prescribed by the commission, is hereby declared to be a public nuisance, and the construction thereof may be enjoined and the maintenance thereof may be abated by action at the suit of the state or any citizen thereof."

It is our conclusion that the words *"maintain"* and *"maintained"* as used in secs. 31.23 (1) and 31.25, Stats., have reference to a dam which was man-made in its origin, or, if not so made but was originally erected through a natural cause, such as beaver, then some affirmative act on the part of the riparian owner to assist in its maintenance is required in order that such statutes apply. An obstruction in a navigable stream is in the nature of a nuisance, and the word *"nuisance"* as appearing in sec. 31.25 should be construed in the light of the applicable common-law principles relating to obstructions in streams.

In *Mohr v. Gault* (1860), 10 Wis. \*513, \*517, 78 Am. Dec. 687, there was involved the obstruction of the outlet stream of a lake claimed to be occasioned by the washing of the earth from the banks of the stream and the depositing of such earth in the stream thus causing the level of the lake to be raised so as to flood the lands of the adjacent owner. Mr. Chief Justice Dixon, in his opinion, stated:

"It may be doubtful, from the facts found, whether, according to the definitions given in the books, the obstructions at the head of the creek, occasioned by the washing of the earth, is or is not a nuisance. *If the washing in of the earth was purely accidental, and not directly attributable to the acts of man, it would not be."* (Emphasis supplied.)

66 C. J. S., Nuisances, p. 743, sec. 8, states the common-law rule to be as follows:

"In order to constitute an actionable nuisance, a wrongful act of defendant, or his agents or servants, must be shown, since damage, loss, or inconvenience suffered is not alone sufficient to maintain an action; and things which may be annoying or damaging but for which no one is at fault are not nuisances, even though all ordinary consequences of nuisances may flow from them. Accordingly, *one cannot be said to create or maintain a nuisance where the condition or state of affairs complained of is due solely to natural causes and he has not by his own act contributed to bring about the alleged nuisance."* (Emphasis supplied.)

In 1950, the attorney general was asked by the public service commission for an opinion on the very point at issue in this case, although the stream involved was one in Columbia county, and in his opinion (39 Op. Atty. Gen. 116, 117) it was stated:

"Once the beaver have been lawfully removed from their houses and flowage it would appear that the said dam is no longer protected by the provisions of sec. 29.24 (1). If the owner, *by some affirmative act,* should thereupon 'maintain' the dam, it would thereupon become an unlawful obstruction in navigable water and the owner would subject himself to the forfeiture provided by sec. 31.23 (1). However, that question will not arise until the beaver have been removed."

In the instant case, the state contends that the act of the defendant in refusing permission to the employees of the conservation commission to enter upon his land to remove the dam did constitute an *"affirmative act"* on the defendant's part in maintaining the dam. With this we cannot agree. The defendant had the legal right to refuse permission to representatives of the conservation commission to cross his lands in order to reach the dam and remove it, even though his motives prompting such refusal are hardly to be commended. No permission of the defendant was required if the representatives of the conservation commission had proceeded by boat propelled over the water of Ox Bow creek, a navigable stream, or if they had entered the stream, other than over defendant's land, and had waded the stream to the point of the dam.

Our attention has been called to the provisions of the amendment to sec. 29.59 (1), Stats., contained in ch. 340, Laws of 1951, which amendment reads as follows:

"Any beaver dam or beaver house causing damage shall not be removed until consent is given by the owner or occupant of the land on which it is located. The owner or occupant of the land failing to give such consent after receiving notice and solicitation shall be liable for all damages

arising thereafter by reason of the continuing existence of beaver structures."

The above amendment to sec. 29.59 (1), Stats., became effective June 14, 1951, which was after the commencement of the action in the instant case, but before the date which the representatives of the conservation commission alleged in their affidavits the defendant had refused to grant permission to enter upon his lands to remove the beaver dam. This statute does not state that defendant is required to grant permission to representatives of the conservation commission to enter upon his land, but merely provides that if he fails to give such consent he may be liable for damages to the property owners who have sustained damage as a result of the continued existence of the dam.

Prior to such enactment of ch. 340, Laws of 1951, the state possessed the power through its proper officers to have navigated Ox Bow creek by boat, or to have waded the stream, to the point of the dam and to have removed all of the dam located within the limits of the high-water marks of the stream. Although the defendant, as riparian owner owned the bed of the stream, such ownership was subject to public rights of navigation and recreation. *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 53 N. W. (2d) 514. At first blush it might appear that by the enactment of ch. 340, Laws of 1951, the state had abdicated its police power to unconditionally remove a beaver dam obstructing a navigable stream, but if so construed, such statute would be unconstitutional because the legislature cannot surrender or limit police powers of the state. 11 Am. Jur., Constitutional Law, p. 983, sec. 254; and 16 C. J. S., Constitutional Law, p. 549, sec. 179.

Furthermore, in *Illinois Steel Co. v. Bilot* (1901), 109 Wis. 418, 426, 84 N. W. 855, 85 N. W. 402, this court held that only such concessions may be made by the state to riparian owners as will not violate the essentials of the

trust for public purposes with which title to beds of navigable streams was impressed at the time the state originally acquired its ownership from the United States.

The validity of sec. 29.59 (1), Stats., can be upheld if the words *"land on which it is located"* are limited to land on the banks of the navigable stream so that they do not apply to submerged lands lying within the bed of the stream, and we therefore so construe the same.

This appears to be a case wherein the state has mistaken its remedy. While, in the absence of proof of an affirmative act of maintenance on the part of the defendant, it has no right in this action to cause the defendant to abate and remove the beaver dam, the state itself possesses an inherent power to do so provided it does not trespass upon the lands of the defendant other than those lying within the bed of the stream.

The pleadings and affidavits before the trial court at the time of the hearing on the motion for summary judgment raised an issue of fact as to whether the defendant had performed any affirmative act to maintain the beaver dam, and the case therefore should not have been disposed of by summary judgment. Defendant's refusal to grant permission to employees of the conservation commission to cross his lands did not constitute such an affirmative act. Unless the state has proof of some affirmative act of maintenance on defendant's part, the complaint should be dismissed upon its merits.

*By the Court.*—Judgment reversed and cause remanded for further proceedings in conformity with this opinion.