Bino and wife, Appellants, vs. City of Hurley, Respondent.

*April 2—May 1, 1956.*

12

14

For the appellants there was a brief by *Clarence V. Olson* of Ashland, and *Walter T. Norlin* of Washburn, and oral argument by *Mr. Norlin*.

For the respondent there was a brief and oral argument by *Alex J. Raineri,* city attorney.

STEINLE, J.    Appellants' challenge is directed against the provisions in the ordinance which prohibit the use of the lake for bathing, boating, or swimming purposes.  No attack is made upon the ordinance in so far as it prohibits the deposit-

ing of refuse, decayed vegetable or animal matter, and the like in the lake, nor drainage therein from cesspools, sewage disposal units, and such.

Riparian owners have a right to the use of the shore line of their property. They also have a right to the reasonable use of the water of the lake. The latter right, like the former, is a property right. It carries with it the privilege to use the lake for bathing, swimming, and boating purposes.

Here, neither the appellants' predecessor in title, nor appellants, ever divested themselves of the riparian rights. Under the grant to the city, riparian rights were reserved to the owner. It was expressly agreed that the riparian rights were not conveyed to the city.

Appellants contend that the city's denial to them by ordinance of the use of the lake for bathing, boating, and swimming constitutes the taking of their property without due process and without compensation. They submit that under the contract they never surrendered any part of their riparian rights to the city, and that the city may not validly, under the guise of police power, extend the contractual rights acquired and exercised by it in its proprietary capacity. In the alternative, appellants maintain that were the ordinance to be declared valid, nevertheless, under the facts of the case, the ordinance constituted an unreasonable exercise of the police power of the city.

It is the city's position that the parties to the grant intended that there be reservation to the grantor of the rights to the shore line, but not to the water of the lake. Further, the city submits, that its ordinance in all particulars, including the provisions which prohibit swimming, boating, and bathing is designed to keep the water of the lake uncontaminated, thereby protecting the city's supply from contamination and safeguarding the public health. It is further

contended that the ordinance is valid, and that it does not constitute an unreasonable exercise of police power.

The trial court made no finding that the grantor reserved only the riparian right to the shore line and not to the water. There is no bill of exceptions.

In its memorandum decision the trial court cited and analyzed a number of cases from other jurisdictions in which the constitutionality of ordinances forbidding swimming and bathing in lakes and other waters used by municipalities for water-supply purposes, had been challenged. Amongst the cases noted by the court were those of *People v. Hulbert* (1902), 131 Mich. 156, 91 N. W. 211; *State v. Morse* (1911), 84 Vt. 387, 80 Atl. 189; and *State v. Heller* (1937), 123 Conn. 492, 196 Atl. 337. In *People v. Hulbert,* the supreme court of Michigan held unconstitutional an ordinance which prohibited bathing in a lake lying wholly in the city of Battle Creek from which the city drew its water supply. The city was a riparian owner possessing 200 feet of lakeshore, the balance of the shore line being owned by private persons who used the lake for swimming, fishing, etc. In that case the court said (p. 173):

"Each proprietor has an equal right to the use of the stream for the ordinary purposes of the house and farm, even though such use may in some degree lessen the volume of the stream, or affect the purity of the water. . . . This right is not affected by the fact that the lower proprietor is a municipality instead of an individual. . . .

". . . It may be conceded that the police power of the state is very broad, but our attention has not been called to any principle of law, or to any case, the practical application of which will enable a village, city, or other municipality, for the purpose of obtaining a water supply, to prevent the ordinary and reasonable use of the waters of an inland lake or stream by an upper riparian proprietor, without the exercise of the right of eminent domain or without compensation."

In *State v. Morse,* the supreme court of Vermont held constitutional and valid an order of the state board of health which prohibited bathing and swimming in a navigable pond from which the city of Montpelier took its water supply. The shore line was occupied by the city and by a number of other owners. It was there stated that (p. 400) :

"Turning again to the case in hand we are not satisfied and cannot say that the regulation prohibiting bathing in Berlin pond was a palpable violation of respondent's rights; nor can we, from the record aided by facts of which we may take judicial notice, say that such prohibition was unnecessary or unreasonable. On the contrary we take notice of the germ theory of disease, and that the human body may give off germs dangerous to the public health; and that should these reach the intake of the water supply, they might, as suggested by the state board, spread contagion throughout the city."

In *State v. Heller,* the supreme court of Connecticut noted that upon substantially the same factual situations, the courts of Michigan and Vermont (in the cases above referred to) had reached diametrical opposite conclusions. The Connecticut court determined to follow the ruling of the·Vermont court. The report of the Connecticut case indicates that the defendant owned land across which flowed a creek that drained into a reservoir, the latter of which was used as a part of the city of Bridgeport's water supply, being furnished through a utility. A statute prohibited anyone from bathing in a stream tributary to a reservoir from which a city obtained its water supply. The defendant was charged with violating the statute. He contended that as an owner of land abutting the stream he was unconstitutionally deprived of his property through the operation of the statute. The court sustained the constitutionality of the statute. In part it was said (pp. 494, 496) :

"It is unquestioned that the defendant as riparian owner had a right which included ordinary and reasonable bathing

privileges in this brook by himself, his family, and inmates and guests of his household. . . . [the statute] can only be sustained as an exercise of the state's police power. Furthermore, it is not disputed that the object of the statute in question is to protect the health of citizens using water distributed through these reservoirs, and that thus its purpose affords a proper basis for the exercise of the police power inherent in the legislature. . . .

" '. . . [the police power] may regulate any business or the use of any property in the interest of the public health, safety, or welfare, provided this be done reasonably. To that extent the public interest is supreme and the private interest must yield. Eminent domain takes property because it is useful to the public. The police power regulates the use of property or impairs the rights in property, because the free exercise of these rights is detrimental to public interest.' "

In the case at bar the city acts in a proprietary capacity in withdrawing water from the lake and in supplying its inhabitants with the water. In *Eau Claire Dells Imp. Co. v. Eau Claire* (1920), 172 Wis. 240, 179 N. W. 2, the court held that in operating a waterworks system a city acts in a proprietary capacity and not in a governmental capacity, and that in such operation the city is governed by the same laws which apply to private corporations.

It cannot be held that the original grantor did not reserve its riparian rights with reference to the water in the lake. In the grant there is no specification that the city is entitled to withdraw water from the lake that has not been used in the ordinary exercise of riparian owners' rights including bathing, boating, and swimming.

We share the view indicated by the Michigan court in *People v. Hulbert, supra,* that had the city desired to prevent the ordinary privileges compatible with riparian rights, including bathing, boating, and swimming, it ought to have contracted for the acquisition of the same or should have acquired by eminent domain the property to which the rights attached.

The situation in the present case is controlled by the principle laid down in *Allen v. Detroit* (1911), 167 Mich. 464, 133 N. W. 317. There, the city of Detroit purchased a lot in a subdivision restricted to residences, and undertook to build a fire-engine house thereon. The court held that the city could not erect a building which would be in violation of the restriction, without release from the other lot owners or condemnation of their interests. The court said (pp. 473, 474) :

"Building restrictions are private property, an interest in real estate in the nature of an easement, go with the land, and are a property right of value, which cannot be taken for the public use without due process of law and compensation therefor; the validity of such restriction not being affected by the character of the parties in interest. . . .

"The contention that the city under its general police power, may ignore this building restriction, and erect its fire-engine house within the restricted district because it is necessary for the public good and to protect the lives and property of citizens in that locality, is not tenable. When such action deprives the individual of a vested right in property, it goes beyond regulation under police power, and becomes an act of eminent domain governed by the appropriate condemnation laws. Police power is regulative and restrictive only, limiting and dictating the owner's use of property for public safety, but never extends to depriving him of it for public benefit."

Similar rulings obtained in *Story v. New York Elevated R. R. Co.* (1882), 90 N. Y. 122, and *Ladd v. Boston* (1890), 151 Mass. 585, 24 N. E. 858. We perceive of no material distinction between building restrictions created by contract and the rights of a riparian owner reserved to him by the terms of an agreement. Both are substantial property rights and invasion thereof cannot be classified as slight. In *Allen v. Detroit, supra,* the court also stated that the validity of building restrictions is not affected by the character of the

parties in interest,—that municipalities are not immune from the rules of law which apply to private parties touching building restrictions. In our opinion the same must be said with respect to the validity of the reservation in the grantor as recognized by the city of Hurley in the grant.

It does not appear from the record that the lake is the only place from which the city can obtain its water supply. There is nothing to suggest that the city would not be able to find a supply of water by digging or drilling wells as is done in most municipalities of this state. It is practically conceded that the water drawn from the lake could be made safe for public consumption and other use, were it adequately treated. The saving of expense in engaging the services of a full-time chemist does not justify the taking of a property right from the riparian owner. While the lake may not be very inviting for swimming and bathing, nevertheless, it does not appear that such activities could not with safety be engaged in by the riparian owner or owners, their families, and guests. The court's findings indicate that it is not likely that a permit for a public beach would ever be issued by the authorities.

Depriving a riparian owner on a lake in the use of the water for swimming, bathing, and boating does not result in but incidental damage to his property which need not be compensated for by a municipality adopting an ordinance prohibiting such an activity in the interest of public health and welfare. Such riparian right is a substantial and valuable one for which compensation must be given if the owner is to be deprived of it.

Should the city be desirous of acquiring the right to take from the lake water not used in the exercise of ordinary riparian rights, it may invoke its power of eminent domain and acquire the property of the riparian owners for just compensation, or it may contract to obtain such rights.

We are constrained to hold that the ordinance in question is not within the limits of proper regulation, but is actually

the taking of property of the appellants without due process and without compensation. It violates the Fourteenth amendment of the federal constitution and the provisions of sec. 13, art. I, Wisconsin constitution.

In view of this conclusion we deem it unnecessary to determine other questions presented.

*By the Court.*—Judgment reversed, and cause remanded with directions to declare the ordinance unconstitutional as to provisions relating to the prohibition of bathing, boating, and swimming in the lake by riparian owners.

GEHL, J. (*concurring*). I would base my conclusion, which is the same as that of the majority, upon the ground that the city is estopped to assert any right which it might have to prevent plaintiffs from exercising their riparian rights to swim or bathe in or to sail on the lake. Neither the city nor its predecessor in title could have obtained the easement by the use of which it acquires its supply of water except by gift, contract, or condemnation. The record discloses that it was obtained by contract and that the city claims no right to the water except by virtue of the contract which was assigned to it. It holds the right in its proprietary capacity and in that capacity it is subject to the law of estoppel. In *Chicago, St. P., M. & O. R. Co. v. Douglas County* (1908), 134 Wis. 197, 206, 114 N. W. 511, we said:

"It is, however, quite well settled that when the state makes itself a party to an action or to a contract or grant in its proprietary capacity it is subject to the law of estoppel as other parties litigant or other contracting parties."

If the state may be estopped under the circumstances stated, it is only a short step to saying that a city may likewise be. See *Libby, McNeill & Libby v. Dept. of Taxation* (1952), 260 Wis. 551, 51 N. W. (2d) 796; *State ex rel. A. Hynek & Sons Co. v. Board of Appeals* (1954), 267 Wis. 309, 64

N. W. (2d) 741, 66 N. W. (2d) 623. The principles of equity should be applicable to the city which does not find itself helpless because we hold that it is bound by its contract. The city has available the right of purchase or eminent domain or the means of treating the water so as to make it clean. True, resort to either of these methods might result in greater expense to it than would the denial to plaintiffs of the rights which the city's predecessor expressly agreed should continue to exist in plaintiffs' predecessor and its assignees. But that would not relieve the city of its duty to abide by the terms of its contract, nor would it permit us to disregard the equity and justice of the case because of the supposed superior right of the city to take property in the exercise of its police power.

CURRIE, J. (*dissenting*). The plaintiffs' complaint alleges as the sole ground of the claimed invalidity of the ordinance that the same constitutes "an unreasonable exercise of police power by the city of Hurley and deprive[s] the plaintiffs of property rights without just compensation in violation of the Fourteenth amendment of the federal constitution and the provisions of sec. 13, art. I of the Wisconsin constitution." This court has always interpreted the provisions of sec. 13, art. I [1] of the Wisconsin constitution, as being embraced within the due-process clause of the Fourteenth amendment of the United States constitution, so it therefore is only necessary on this appeal to consider authorities arising under the due-process clause of the Fourteenth amendment.

There is no question but that a state, or any political subdivision thereof empowered so to do by the legislature, may exercise the police power to protect the purity of the water supply of its citizens. This is because the protection of the

[1] Sec. 13, art. I, Wisconsin constitution, reads : The property of no person shall be taken for public use without just compensation therefor.

public health is always recognized as a proper objective for the exercise of the police power.

Where there is no actual taking of property by reason of a statute or ordinance, but only a deprivation of the owner from making certain use of such property to his damage resulting from a statute or ordinance properly enacted to carry out the police power in promoting the general welfare, no damages are recoverable by the owner. *Carazalla v. State* (1955), 269 Wis. 593, 608a, 70 N. W. (2d) 208, 71 N. W. (2d) 276, 277; and *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 153, 196 N. W. 451, 33 A. L. R. 269.

As the majority opinion points out, there is a division of authority as to whether an ordinance or statute, which prohibits swimming, bathing, and boating on waters from which the community draws its drinking water, is constitutional under the due-process clause of the Fourteenth amendment as against the claim of riparian owners that they are being deprived of their riparian rights without compensation. The leading case holding that such an ordinance is unconstitutional is *People v. Hulbert* (1902), 131 Mich. 156, 91 N. W. 211. On the other hand, the cases of *State v. Morse* (1911), 84 Vt. 387, 80 Atl. 189, and *State v. Heller* (1937), 123 Conn. 492, 196 Atl. 337, have upheld the validity of such a statute or ordinance on the ground of it being a valid exercise of the police power enacted to protect the health of the community.

The United States supreme court is the final arbiter on the issue of whether a statutory enactment purporting to be in the exercise of police power transcends the requirements of the due-process clause of the Fourteenth amendment. The unsuccessful riparian owners in the case of *State v. Heller, supra,* decided by the Connecticut court appealed such decision to the United States supreme court. The United States supreme court dismissed the appeal in *Heller v. Connecticut* (1938), 303 U. S. 627, 58 Sup. Ct. 765, 82 L. Ed. 1088, in

a short *per curiam* decision, which stated that no substantial federal question was presented, and cited *Mugler v. Kansas* (1887), 123 U. S. 623, 668, 669, 8 Sup. Ct. 273, 31 L. Ed. 205, and *Euclid v. Ambler Realty Co.* (1926), 272 U. S. 365, 388, 389, 47 Sup. Ct. 114, 71 L. Ed. 303, in support of such holding.

The citation of these two cases in the *per curiam* opinion of the United States supreme court in *Heller v. Connecticut, supra,* is highly significant. The case of *Mugler v. Kansas, supra,* was recently cited by this court in *Carazalla v. State, supra,* and involved the constitutionality of a state prohibition law which rendered virtually valueless property of the plaintiff. The case of *Euclid v. Ambler Realty Co., supra,* involved the constitutionality of a city zoning ordinance which was alleged to have greatly depreciated the value of plaintiff's property. It is thus the position of the United States supreme court that a riparian owner, who has been barred from exercising his riparian rights of swimming, boating, and bathing by reason of a statute or ordinance enacted to protect the public health, stands in the same category as does the owner of a stock of liquor which is rendered valueless by a prohibition statute or an owner of real estate the value of whose property is seriously reduced by enactment of a zoning ordinance.

The Illinois court in *People ex rel. Baker v. Strautz* (1944), 386 Ill. 360, 54 N. E. (2d) 441, well stated the principle which governs the disposition of the instant case as follows (p. 364) :

"The exercise of the police power is a matter resting in the discretion of the legislature or the board or tribunal to which the power is delegated, and the courts will not interfere with the exercise of this power except where the regulations adopted for the protection of the public health are arbitrary, oppressive, and unreasonable. The court has nothing to do with the wisdom or expediency of the measures

adopted." (Citing among other authorities the Vermont case of *State v. Morse, supra.*)

Other decisions laying down this same principle and citing *State v. Morse, supra,* as authority therefor are *Weber City Sanitation Comm. v. Craft* (1955), 196 Va. 1140, 87 S. E. (2d) 153, 159, and *Moore v. Draper* (Fla. 1952), 57 So. (2d) 648, 649.

The majority opinion in the instant case is partly based upon the provision inserted in the easement granted in 1925 by the Chequamegan Ice Company to the private water utility, dated April 1, 1925, granting the utility the right to draw water out of Lake Lavina under which the grantor ice company reserved its riparian rights. However, such riparian rights of the ice company to which plaintiffs have now succeeded were always subject to exercise by the state or the city of its police power to protect the purity of the water supply of the citizens of Hurley. Any contract which would attempt to foreclose the city from exercising such police power would be absolutely void and of no binding effect upon the city, even if the city had been a party thereto. *State v. Sensenbrenner* (1952), 262 Wis. 118, 124, 53 N. W. (2d) 773; 11 Am. Jur., Constitutional Law, p. 983, sec. 254; and 16 C. J. S., Constitutional Law, p. 549, sec. 179.

The ordinance before us on this appeal was enacted in July, 1925, by the city at a time when the private water utility was still the source of the water supply of the citizens of Hurley. There would seem to be no question under the authorities previously cited, and particularly the *per curiam* decision of the United States supreme court in *Heller v. Connecticut, supra,* that such ordinance, when enacted, was a constitutional exercise of police power by the city. Thereafter, the city bought out the private water utility. The majority opinion stresses the fact that, after the city of Hurley acquired the facilities of the private water-utility company, the city oper-

ated such utility in its proprietary capacity. It is intimated that the city is therefore bound by the reservation of riparian rights in the 1925 grant of easement. However, as pointed out supra, the city cannot by contract abdicate its right to exercise its police power to protect the purity of its citizens' water supply, and it is immaterial whether such water supply is being provided by a private or a public utility.

If the plaintiffs had sought to enjoin the city in its proprietary capacity from withdrawing further water from the lake on the ground of breach of contract we would be confronted with an entirely different problem. However, the plaintiffs did not institute such action and we are not required to decide any issue based on such a theory of relief. Clearly the plaintiffs are not entitled to enjoin enforcement of the ordinance on the ground sought in this action, viz., that it is an invalid exercise of the police power because it violates the due-process clause of the Fourteenth amendment.

The majority opinion is largely grounded upon the decision of the Michigan court in *Allen v. Detroit* (1911), 167 Mich. 464, 133 N. W. 317. Undoubtedly, that case was correctly decided, but it is not at all in point here. The *Allen Case* is a perfect example of a situation where a municipality must resort to eminent domain rather than attempt to take property for its own use under the guise of the exercise of the police power. That is because there was an actual physical acquiring of the land on which it was proposed to erect the fire-engine house. The restrictive covenants running in favor of the plaintiffs were actually property rights in such land and stand in the same category as would rights of easement. In a situation where a municipality makes such use of the servient estate as is inconsistent with the exercise of an easement over the same by others, or violates the provisions of restrictive covenants existing in favor of neighboring landowners, there is an actual *"taking"* and the municipality

must resort to eminent domain in order to cut off such easement rights or rights arising under restrictive covenants. Where there is such an actual taking the municipality must resort to the remedy of eminent domain.

1 Nichols, Eminent Domain (3d ed.), p. 69, sec. 1.42 (2), states:

"In the exercise of eminent domain property or an easement therein is taken from the owner and applied to public use because the use or enjoyment of such property or easement therein is beneficial to the public. In the exercise of the police power the owner is denied the unrestricted use or enjoyment of his property, or his property is taken from him because his use or enjoyment of such property is injurious to the public welfare."

The test of whether or not there is a *"taking"* by a state, or political subdivision thereof, is whether it has made such use of particular property as will deprive the owner of either the property itself or of his enjoyment of such property or rights appertaining thereto. If the enjoyment of such property rights by the owner is not barred by any incompatible use of the property by the state, or a political subdivision thereof, but results from a statutory enactment grounded in a proper and reasonable exercise of the police power, there is no *"taking"* in the sense that requires resort to eminent domain. Applying this test to the instant case, it is not the use of the lake made by the city of Hurley in pumping water therefrom which prevents the plaintiff riparian owners from bathing, swimming, or boating. In fact, there is no claim made that the city's withdrawal of water has in any way interfered with the exercise of such riparian rights. Therefore, it clearly is the prohibitions of the ordinance and not the use of the waters of the lake by the city which has prevented the plaintiffs from utilizing their riparian rights. This conclusively establishes that we are faced on this appeal with

a proper exercise of police power and not a *"taking"* for which compensation must be paid.

The learned trial court properly held that the ordinance constituted a valid exercise of the police power by the city and such judgment should be affirmed.